LOMAX *v.* STATE.

In Banc. Mar. 14, 1949.

(39 So. (2d) 267)

**Stovall & Smith**, for appellant:

**George H. Ethridge**, Assistant Attorney General, for appellee.

McGehee, C. J.

The appellant Mandy Lomax, a negro woman, was indicted for the alleged murder of another negro woman, Lee Dora Lewellyn, and was convicted of manslaughter.

On this appeal there are five grounds of alleged error assigned, but in view of the conclusion that we have reached it is only necessary that we discuss one of them, and that is whether or not the rule announced in the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, and in other cases decided both prior and subsequent thereto, is applicable in the instant case. That rule is that "Where the defendant or the defendant's witnesses are the only eye witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a creditable witness or witnesses for the State, or by the physical facts or by the facts of common knowledge."

It appears without dispute that about two months prior to the homicide the said Lee Dora Lewellyn had said to

the defendant Mandy Lomax in a threatening. manner, ''You know to get off these streets, because I have got some hot lead in my pocketbook,'' and that she opened it and displayed her pistol therein, that these two women were having trouble in regard to the defendant's husband; that on another occasion, more than a year prior to the killing, the said Lee Dora had threatened to beat up the defendant Mandy with a broom handle and was prevented from doing so by the husband of the latter; that these instances had been reported to the officers by the defendant, according to her undisputed testimony; and that on the night of the killing Mandy and her friend, Ruby Riddle, who occupied one of the apartments in the duplex where Mandy and her husband resided, had returned from church at near 10 o'clock on Sunday evening to find their husbands, Jacob Riddle and Wilson Lomax, gone from home. These two women went out in search for their husbands and while standing at a street intersection they saw a car stop and Lee Dora and one Magaline Edings get out of the car, where Lee Dora was riding on the back seat with Wilson Lomax and Magaline on the front seat with Jacob Riddle. Thereupon the two men drove· away in the car and their two companions walked down the street en route to their homes and approached Ruby and Mandy at the street intersection. That thereupon Ruby said something to Magaline about being out with her husband and Mandy said to Lee Dora, ''You have been out with my husband again.'' Whereupon Lee Dora began advancing toward Mandy, after removing her purse or handbag from under her arm and was ''fumbling'' with it as if to unzip or otherwise open it. That Mandy had in the meantime backed off from her for a distance of approximately fifteen feet and then fired her pistol at Lee Dora, missing her with the first shot, and that thereupon Lee Dora ''whirled'' and kept trying to open her purse as Mandy fired two or three more shots, one of them striking Lee Dora in the back and killing her.

The defendant Mandy Lomax was corroborated by Ruby Riddle to the extent that Lee Dora was advancing toward Mandy while the latter was backing away, but both Ruby and Magaline fled from the scene before the shooting started. Magaline did not testify.

Within about ten minutes after the shooting occurred the defendant Mandy Lomax had returned to her home, telephoned to the officers from the house of a neighbor and requested that they come to her home. Upon the arrival of the officers she informed them as to what she had done, told them about Lee Dora trying to take her husband away from her, but did not go into the details as to what the deceased was doing at the time she was shot. She accompanied the officers to the scene of the killing, and they there found the open purse or handbag of the deceased near her arm as she lay on the ground, and also found a fully loaded pistol within about one foot of where the purse or handbag lay. There is no contention that this pistol did not belong to the deceased.

There was some contradiction between what the defendant told the officers about the number of shots fired, etc., but we are of the opinion that these discrepancies do not amount to a substantial contradiction in material particulars.

The defendant's version of what occurred appears to be entirely reasonable and fully supported by the physical facts, by the previous occurrence when Lee Dora had displayed her pistol in her purse, and it is not contradicted by matters of common knowledge.

And while the defendant did not testify that when she went in search for her husband she expected to find Lee Dora with him, this fact is a reasonable inference, and in view of what had occurred between the two women on the previous occasions she had a right to carry her pistol along in her own purse or handbag for self protection, and it is also a reasonable inference and is highly probable that if she had not acted promptly in

her reasonably apparent self defense she would have lost her own life on the occasion in question.

It was not essential under the facts of this case that Mandy show that Lee Dora had a weapon in her hand, or in sight, when she shot, nor that Lee Dora said anything at the time, evidencing her desire to harm her. Mandy had the right to anticipate her acts, and to act upon what then reasonably appeared to be necessary for the protection of her life. Scott v. State, Miss., 34 So. (2d) 718, and cases cited therein.

We are of the opinion that the rule hereinbefore mentioned as announced in the Weathersby case is clearly applicable under the facts of the case at bar, and that, therefore, there should have been a directed verdict in favor of the defendant as requested.

Reversed and judgment here for the appellant.