### HOUSTON v. STATE

No. 42400          February 4, 1963          149 So. 2d 331

*Ethridge & Grisham,* Oxford, for appellant.

G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

The appellant was indicted by the Grand Jury of Lafayette County, Mississippi for the murder of Mathis Jones. She was found guilty of manslaughter and sentenced to serve eleven years in the state penitentiary.

Several assignments of error were filed. The Court will consider these two: First, the court erred in admitting into evidence as a dying declaration a statement made by Mathis Jones, the deceased, to the witness, Boyce Bratton, Sheriff of Lafayette County; and second, the court erred in failing to grant defendant's motion for a directed verdict of not guilty. The so-called

dying declaration was inadmissible, and the appellant, as the only eyewitness, made out a case of self-defense which is reasonable, uncontradicted by admissible evidence, and corroborated.

The state called three witnesses: Dr. E. V. Bramlett, the attending physician; Boyce Bratton, former sheriff; and Newt King, former city marshal.

Jones died at 5:15 p. m. on April 27, 1959 of a shotgun wound which was inflicted earlier that day. The wound was no larger than a silver dollar. He entered the hospital between 11:15 and 11:30 a. m. and was taken into the operating room at 11:45 a. m.

Boyce Bratton, the Sheriff, interviewed Jones at the hospital between the time that he entered the hospital and the time he was taken into the operating room. According to Bratton, Jones stated that he went to the defendant's home, that they argued, that he started to leave, and that she shot him while she was in the house and while he was in her yard, which was about thirty-five feet down the hill. Bratton testified that he thought Jones knew he was going to die when Jones was talking to him. He thought he was rational at the time he made his statement. His opinion was that Jones was under the impression that he was going to die, because he put his arm across his stomach there and said: "She's killed me." The sheriff further stated: "I think if I'd been his shape I'd have realized that I was going to die, and when he put his hand across his stomach and said more than once, 'She's killed me', I felt like he realized that was the end."

Dr. Bramlett testified that he did not know whether or not Jones recognized or was conscious of impending death at the time he talked with Jones, which was only minutes after Bratton's conversation with Jones. Immediately after Jones talked with Bratton, Dr. Bramlett asked Jones what happened; Jones told Dr. Bramlett that, (in Dr. Bramlett's words), "he was too sick to

talk, that he would talk when he felt better." The doctor was asked: "In your professional opinion, when you were there examining him, did he appear to be, rational and understand the import of the questions that you asked him?" Dr. Bramlett answered: "I think he did. [He said] That he did not feel like talking then, he would have to feel better." The doctor said also that Jones had been recently shot, within the hour, when he saw him. The court questioned the doctor: "Doctor, at the time, did this man recognize or was he conscious of impending death?" The doctor answered, "Judge, I don't know. I think he was as rational as any man could be that had just been shot."

King, the Marshal, stated that "I was standing back away from him and couldn't hear or understand exactly what they were saying, so I didn't say anything until he got through." However, King was of the opinion, based upon observation from his conversation, that he appeared to be sane and a rational person. The sheriff further stated: "I feel like he was sensible enough to know that he couldn't live."

Is this sufficient evidence to say that Mathis Jones made a dying declaration?

The court allowed this evidence, over timely objections of the defendant, as a dying declaration, these statements allegedly made by Jones to Bratton prior to Jones being taken into the operating room.

(Hn 1) The court admitted this as a dying declaration in spite of the fact that Dr. Eugene Bramlett, who attended and operated on Jones, stated in response to the question by the trial judge that he did not know whether or not the deceased at the time recognized or was conscious of impending death; furthermore, in spite of the fact that immediately after Jones had his conversation with Bratton, Jones stated to Dr. Bramlett in response to a question as to what happened that he

"was too sick to talk and that he would talk when he felt better."

On cross-examination of the sheriff in reference to the testimony Dr. Bramlett gave, in which Bramlett stated that the deceased said when he got better or felt better that he would probably talk, that the deceased must have thought that he wasn't going to die, the sheriff said: "I feel like that if he made that statement that he was hoping that he would live."

From the above evidence, the question before the Court is not what other people thought concerning whether or not he would die, but whether deceased himself thought he was going to die. From this evidence we must determine if the judge was justified in believing beyond a reasonable doubt that this was in all of its material parts a dying declaration and complies in every way with the law in reference to dying declarations.

As this Court stated in Lea v. State, 138 Miss. 761, 103 So. 368: "A dying declaration is made without the sanctity of an oath and without an opportunity to cross-examine the declarant. To take the place of that sanctity and that right there must be an undoubting belief in the mind of the declarant, at the time the declaration is made, that death is upon him. If it shall appear in any manner that there was hope of recovery, however faint it may have been, still lingering in his breast, the required sanctity is not afforded, and the statement cannot be received. The belief by the declarant that he may ultimately die as a result of his injury is not sufficient to authorize the admission of his statement as a dying declaration. The predicate must 'exclude all hope of life. It must reach the point of absolute certainty in the mind of the declarant. All hope must be gone. He must feel sure that the finger of death is upon him." As this Court stated in Hardeman v. State, 216 Miss. 115, 61 So. 2d 797, after quoting from Lea v. State, supra: "And the trial judge, in order to admit such a declara-

tion, must believe beyond a reasonable doubt that declaration was made under realization and solemn sense of impending death. Such declaration should be admitted with great caution." The test is not whether or not the witness knew the deceased was dying, nor even that the dying man should have known it. Simmons v. State, 206 Miss. 535, 40 So. 2d 289.

In Lea v. State, supra, the trial court admitted, over objection, an alleged dying declaration made on the day of declarant's death in the presence of two nurses. One nurse testified that from the time the deceased entered the hospital (about 30 days before death) until his death, he had no hopes of recovery. She based this on the fact that the deceased told her as many as a half dozen times that he had no hope of recovery; however, no such statement was made by him to her on the day of the declaration, which was the day of death. Another nurse on the morning of his death told the deceased that it was probable that he would not live through the day, and she asked him, "Do you realize this?" He then said, "Yes; I reckon so." The nurse asked him about the trouble; the deceased said he would tell her later. Later that day he did make the alleged dying declaration, which was admitted into evidence by the trial court. The Supreme Court, in reversing because the dying declaration did not meet the requirements of the law, pointed out "that although the deceased expressed no hope of recovery at any time, nevertheless, just a little while before making the dying declaration, he stated that he felt very well, and when Miss Vaughan urged him to make a statement of the facts of the homicide he said he would do so later, and when she informed him that he could not recover and would probably die before night he said, "Yes; I reckon so'."

In Baylis v. State, 182 Miss. 794, 183 So. 527, the deceased said several times that he was going to die; one or more time he said he thought he was going to

die; and another time he said he believed he was going to die. The trial court admitted the statement of the deceased as a dying declaration. In reversing, the Supreme Court pointed out that experience shows that dying persons have made false self-serving declarations; and in quoting with approval from a case from another state, this Court pointed out that dying declarations are dangerous and that they are not so strong a safeguard against falsehood as they were when the rule admitting them was first laid down.

We do not believe the statement of the deceased made to the sheriff, Boyce Bratton, was sufficient to justify the court in saying that this is a dying declaration and should have gone to the jury.

With the dying declaration out, the only testimony in the case is that on behalf of the defendant, the appellant in this case.

The testimony is to the effect that Mamie Lee Houston lived with her step-father, Clyde Thompson, and her mother a short distance east of Oxford, Mississippi. According to her version, deceased and another Negro man, who were masked, robbed and beat her earlier in the year prior to the homicide. Since the robbers were masked, she did not know their identity, but later learned that one was the deceased. He threatened her if she should tell on him, and a little over two weeks before the homicide he forced her to go and live with him at the house of his alleged mother and father near Batesville some thirty or forty miles away, where he kept a careful watch over her, bringing her back to the neighborhood of her home about three days before the killing. The deceased came to her house early in the morning before, but was told by her mother to leave. On the morning of the killing, appellant was in the kitchen when he came into the house. They fought and struggled. He was trying to kill her by ''choking her to death.'' She fell across the bed, where within arm's reach was a load-

ed 20-guage shotgun, which she obtained to protect herself, and in the struggle the gun went off while the deceased was pulling on it, and it shot him as he stood beside the bed. She ran out of the house and immediately notified the officers that she had shot the deceased. The officers came out and made an investigation, but never did go into the house. The father and mother of the appellant both testified that the house was all torn up, the table was torn down, and the bed was broken, indicating that there had been a big struggle within the house. A milkman verified the fact that the appellant had been injured some time ago and was found on the highway unconscious and was taken to the hospital, thus substantiating her evidence that someone had attacked her some time before. A ballistics expert testified that the wound the deceased received would have had to be received at close range, because there was no indication of spreading of shot.

(Hn 2) We find at no place was there any contradictory testimony as to the statement made by the appellant. We find that the physical facts substantiate her in every detail. The physical facts in no wise contradict her statement as to the occurrence there the morning of the killing. The appellant, as the only eyewitness, made out a case of self-defense, which from the testimony is reasonable, uncontradicted by admissible evidence, and was corroborated in every detail.

In Weathersby v. State, 165 Miss. 207, 147 So. 481, this Court stated:

"The only eyewitnesses to this homicide were the appellant and his wife. According to their testimony a case of self-defense was sufficiently made out, as against which the state argues that there are physical facts which contradict them. It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted

as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918; Walters v. State, 153 Miss. 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150.''

We believe that the court should have sustained the motion for a directed verdict at the close of appellant's evidence and discharged the defendant. Therefore, the case is reversed and the defendant discharged.

Reversed and appellant discharged.

*Lee, P. J., McGehee, C. J., and Rodgers and Jones, JJ.,* concur.