AVEN *v.* STATE

No. 42613          May 13, 1963          152 So. 2d 924

*Jack N. Tucker,* Tunica; *Stovall Lowrey,* Clarksdale, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

Appellant, Lucius E. Aven, was indicted by a grand jury of Tunica County for the crime of murder. Upon the trial of the case, the circuit judge granted defendant an instruction apprising the jury that the evidence was insufficient to sustain a charge of murder. However, a manslaughter instruction was given to the jury by the court at the request of the State, defining the crime of "manslaughter." The jury returned a verdict finding defendant guilty of manslaughter; whereupon, the trial judge sentenced defendant to serve a term of two years in the Mississippi State Penitentiary. Defendant has appealed from the sentence and judgment of the trial court to this Court, and has complained of several errors alleged to have occurred during the trial. We deem it necessary, however, to discuss only one assignment of error.

This is an unusually sad case. Defendant was charged with having murdered his brother. He admitted that he shot his brother but asserted that he did so in necessary self-defense. There were no eye-witnesses to the actual homicide; in fact, there is very little conflict in the evidence.

The record reveals that deceased, Archie Aven, left his home when he was about fifteen years of age and remained away thirty-six years. During his absence, his mother and father died, and his family never heard from him. He came home in June 1959 and advised members of his family that he had spent twenty-three years in the Army, the last thirteen years in Alaska. At first, he lived with his sister. Later, he loaned defendant money to go in business and he was furnished a room in the living quarters attached to the store building. Defendant claimed he repaid deceased the money

he had borrowed. Deceased drew retirement pay and usually he remained away from the store until he had spent his monthly income. He purchased a Cadillac automobile and defendant paid twenty-two payments on the car. Defendant finally advised his brother Archie that he could no longer make payments for him. It was undisputed that thereafter Archie attacked and beat defendant four times before the altercation which resulted in the fatal shooting.

On August 5, 1962, about five o'clock in the afternoon, at a time when defendant's family was absent, Archie drove his Cadillac automobile to the back of the store, and entered his living quarters through a back door. He came through the store and motioned to defendant to come inside the store. When he entered, Archie advised him that he had heard that he was about to sell the business, and began cursing and abusing him, and finally knocked him down and stomped him, breaking his wristwatch. Defendant attempted to call the sheriff but his brother took the telephone away from him. However, the wife of a deputy sheriff answered the phone and heard curses and abusive language on the party line at the time when the altercation was in progress at the store.

Witnesses for the prosecution and defense testified that the defendant came outside into the service station area in a bloody shirt and his face was bleeding. Defendant went into the living quarters and returned wearing a clean shirt. The evidence further shows that Archie came out in front of the store and began to ask questions of the bystanders in order to determine whether or not they had summoned the sheriff. Although some of the witnesses did not hear all that he had said, it is clear that Archie told defendant that "I am going to do what I came to do", "I am going to get even with you", "You had just as well make up your mind where you want it at — where you are going to get it out here

or in the house.'' Deceased struck defendant and the bystanders became apprehensive and walked away. Defendant went into the store and in a short while he was followed by Archie.

There were no eye-witnesses to the fatal event which happened inside the store. Defendant testified that his brother followed him into the store, and while threatening his life, he approached him with a butcher knife, wrapped in a rag. Defendant said ''I tried to get him to stop. I said 'Please don't come on me with that knife. I can't fight you physically. I can't run.' If I could, I would have tried to get away. I was hemmed in behind there where I couldn't get away without him cutting me.'' He then testified that he got the pistol out of a cabinet drawer and shot once to let his brother know the gun would fire, but that he would not be deterred. Whereupon, defendant shot his brother.

The only circumstance from which an unfavorable inference may be drawn to the testimony of defendant, is the fact that immediately after the fatal shooting, witnesses who came to the scene did not at first see the butcher knife near the body of the deceased. Defendant explained this apparent inconsistency by testifying that the knife fell under the bread rack and he raked it out with a stick. There is another circumstance which appears to this Court to be more significant: The meat block on which the butcher knife was kept was adjacent to the meat counter where the beer was kept, and there can be no doubt from the testimony that the deceased was openly threatening to do physical violence to defendant and that he was getting beer from a place next to where the butcher knife was usually kept.

Testimony of competent medical doctors, verified by X-ray pictures, showed defendant to be crippled from advanced rheumatoid arthritis in his knees, hip joints, both hands, both ankles and shoulder joints. The testimony further reveals that deceased was five feet, nine

inches tall, and weighed about 170 pounds, while defendant is five feet, seven inches tall, and weighed 138½ pounds.

At the close of the testimony, the attorney for defendant moved the court to direct the jury to return a verdict of "not guilty." When this motion was overruled, the attorney for the defendant presented the trial judge with a written instruction, directing the jury to "find the defendant not guilty." This instruction was marked "Refused" by the judge and was not permitted to be given to the jury.

The action of the judge in refusing to grant a directed verdict is assigned as reversible error, and after a careful examination of this record, we are of the opinion that this assignment of error is well-taken.

(Hn 1) Under the general law, the sufficiency of the evidence in a criminal case may be tested by a motion for the direction of a verdict for acquittal, where the evidence is not sufficient to sustain a criminal charge. 23 A C. J. S., Criminal Law, Sec. 1145 (3), p. 362. (Hn 2) Mississippi has adopted this method of testing the sufficiency of the evidence and a request for a peremptory instruction takes the place of a demurrer to the evidence. McLendon v. State, 187 Miss. 247, 191 So. 821; Jackson v. State, 185 So. 201 (Miss.); Davenport v. State, 144 Miss. 273, 109 So. 707; Woods v. State, 186 Miss. 463, 191 So. 283.

(Hn 3) This Court has heretofore pointed out that where there is no substantial conflict between the evidence for the State and that of the defendant, any inference of guilt that might have been drawn from the evidence for the State disappears when that for the defendant is shown. Defendant's request for a directed verdict of "not guilty" should have been granted. Smith v. State, 198 So. 561 (Miss.).

(Hn 4) We have consistently followed the rule that where the defendant or his witnesses are the only eye-

witnesses to the homicide, their version, if reasonable, must be accepted as true, unless it is substantially contradicted in material particulars by creditable witnesses, or witnesses for the State, or by physical facts, or facts of common knowledge. Weathersby v. State, 165 Miss. 207, 147 So. 481, and cases cited therein.

(Hn 5) This Court has also adopted the rule that where the defendant's explanation of a homicide, showing self-defense, is not contradicted directly or by fair inference, it must be accepted as true. Lomax v. State, 205 Miss. 635, 39 So. 2d 267; Bell v. State, 207 Miss. 518, 42 So. 2d 728; Fortenberry v. State, 216 Miss. 243, 62 So. 2d 325; Newton v. State, 232 Miss. 114, 98 So. 2d 116; and Lee v. State, 232 Miss. 717, 100 So. 2d 358. (Hn 6) The testimony of defendant shows a clear case of self-defense, and the attending circumstances do not materially contradict this theory, but tend to fully corroborate the evidence of defendant.

We have therefore reached the conclusion from the facts in this case that the learned trial judge should have sustained the motion for a directed verdict or granted the written instruction requested by defendant. The judgment of the trial court is therefore reversed and defendant discharged.

Reversed and defendant discharged.

*Lee, P. J., and Arrington, Ethridge and McElroy, JJ.,* concur.