RODGERS, Justice:
The appellant, Jack Cassidy, a negro, was indicted by the Grand Jury of the Second Judicial District of Jasper County, Mississippi, for the alleged murder of Orvin Pugh, a Caucasian. The trial resulted in a conviction of manslaughter, and defendant was sentenced to serve a term of twelve (12) years in the state penitentiary. The defendant has appealed to this Court and contends in this Court, that, (1) the verdict of the jury is contrary to the overwhelming weight of the evidence; (2) the verdict is contrary to the law; (3) that the trial court should have sustained a motion for a directed verdict at the close of the State’s testimony and again at the close of all the evidence; (4) the court erred in permitting the introduction of a signed waiver and in admitting the statement given the sheriff by the defendant as to how the killing occurred.
*123 The record shows that Jack Cassidy lived in a small four-room house in the ’Galilee community in Jasper County with his mentally deficient wife. He was sixty-seven (67) years of age and was unable to work because of a heart ailment. He took medicine for his heart, had trouble breathing and sleeping, and was unable to work. On the night of April 10, 1969, Orvin Pugh went to the home of the appellant. He tried to get some whiskey from appellant but found he had none. He left and appellant then went with his wife to visit his sister-in-law. They returned home at about 12:00 o’clock at night. They started to cook some peas and meat. At this time, Orvin Pugh came back to the home of Jack Cassidy. He talked to Pugh about building a flue for appellant’s stove. He was under the influence of intoxicating liquor and had with him one and one-half pints of bonded whiskey. The testimony of the appellant shows that Pugh poured out a full cup of whiskey and got the appellant to drink it. Appellant’s wife brought two plates of peas and meat to the two men. Mr. Pugh became quarrelsome and stated to Cassidy that negroes were against the white people because of the death of Martin Luther King. The appellant denied any feeling against the white people. Whereupon, Mr. Pugh called him a “damn lie” and stated that he (Pugh) was a member of the Ku Klux Klan and struck the appellant with such force that he broke his jaw in two places. He then struck him again, cutting his face. The appellant seized a loaded shotgun and as Pugh seized the gun, appellant fired the gun from his hip. The shotgun slug struck Pugh below his belt and ranged downward. The appellant then left and went to get someone to take him to the home of the constable. The constable notified the sheriff that Jack Cassidy had shot Mr. Pugh.
The sheriff, constable and a highway patrolman went to the home of the appellant. They found the body of Mr. Pugh and summoned a jury for the coroner’s inquest. The body was moved to a funeral home where the clothing was removed from the body and later sent to the Mississippi Crime Laboratory. The sheriff testified that the apellant had cuts on his face, blood on him, and was “shaking,” his lips were “burst” and that he later learned that he had a broken jaw. He testified that the appellant was not offered a preliminary hearing. The highway patrolman testified that the appellant was advised of his rights and agreed to tell them about the killing. He told them substantially what he testified to on the trial except he said Cassidy told them Mr. Pugh was whipping him; that he loaded the gun and that “Mr. Pugh was coming on him”; that he was approximately “six foot” from Mr. Pugh when he shot him. Both officers testified that the room where the body was found was very small and that nothing in the room was torn up so as to indicate a scuffle except one leg of the daybed had been splintered. They both testified that the appellant was under the influence of intoxicating liquor and there were two empty whiskey bottles in the room. The sheriff testified that the deceased was about forty-three (43) years of age and weighed one hundred thirty-five (135) pounds; that he weighed twenty-five (25) pounds more than the appellant and was seven (7) inches taller than the appellant. An ex-manager of the Mississippi Crime Laboratory testified that from experiments made by him of shots fired from the shotgun into similar cloth fabric, he was able to determine that there was burned powder on the shirt, and that the gun was fired within twelve (12) inches of the shirt of the deceased.
I.
The testimony in its final analysis indicates that Orvin Pugh, a white man, went to the home of Jack Cassidy, a negro, in the nighttime in a drunken condition and started an altercation with the negro. Cassidy shot Pugh with a shotgun and turned himself over to a constable. He was found to be under the influence of intoxicating liquor. His jaw was broken, his lips burst, and he had a cut above his eye. He attempted to tell the officers how the killing *124 occurred. He stuttered and was apparently in a shocked condition. The officers testified he said he was six (6) feet away from Pugh, in a very small room, at the time he shot him. They testified that the only evidence indicating that there had been a “scuffle in the room” was a broken leg of the couch, or daybed. The State contended that the fact that the deceased had some meat in his mouth and very little was disturbed in the room where the body was found, that he told them he was six (6) feet from Pugh and that he loaded his gun before shooting the deceased, indicated that the defendant was guilty of killing the deceased without cause. On this premise, and because the district attorney asked the defendant on the witness stand if he had not also killed other people, the jury found the defendant guilty of manslaughter.
The defendant invoked the so-called “defendant only eyewitness” rule in the trial court, and he insists in this Court that this rule is applicable in this case. We said in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), that when the defendant in a homicide case was the only witness to the killing and that his version of the homicide was reasonable and was not substantially contradicted in material particulars by credible witnesses for the prosecution, or by physical facts of common knowledge, defendant’s version of the homicide must be accepted as true. See cases cited in Weathersby, supra; Aven v. State, 246 Miss. 839, 152 So.2d 924 (1963); Houston v. State, 246 Miss. 77, 149 So.2d 331 (1963); Lee v. State, 232 Miss. 717, 100 So.2d 358 (1958); Barclay v. State, 43 So.2d 213 (Miss. 1949); Lomax v. State, 205 Miss. 635, 39 So.2d 267 (1949); Westbrook v. State, 202 Miss. 426, 32 So.2d 251 (1947); Jarman v. State, 178 Miss. 103, 172 So.2d 869 (1937); Durr v. State, 175 Miss. 797, 168 So. 65 (1936); Henderson v. State, 180 So. 89 (Miss.1938).
Many years ago (1881), in the case of Hawthorne v. State, 58 Miss. 778 (1881), this Court said:
“ * * * We understand the settled rule to be this: The law presumes the accused to be innocent of the crime charged, until the contrary is made to appear ; but when it is shown that he killed the deceased with a deadly weapon, the general presumption of innocence yields to the specific proof of such homicide, and the law infers that it was malicious, and therefore murder, because as a rule, it is unlawful to kill a human being, and is murder if not something else; and as special circumstances only will vary the legal view of homicide so as to relieve it from the character of murder, it is inferred or presumed to be such from the fact of killing unexplained; but if the attendant circumstances are shown in evidence, whether on the part of the State or the accused, the character of the killing is to be determined by considering them, and it is then not a matter for presumption which operates in the absence of explanatory evidence, but for determination from the circumstances shown in evidence. * * * ” (58 Miss, at 787)
Although there may be some minor discrepancies — as we pointed out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933) — in the detailed story given by the defendant to the sheriff, and his version of the killing given on the witness stand, we do not believe the slight variance in the testimony, and the fact that the only evidence of violence found in the room was a broken leg from the couch, is sufficient evidence to overcome the testimony of the accused as to how the homicide occurred showing self-defense. The injured physical condition of the defendant corroborates his story. There is no evidence to sustain the State’s theory that the shotgun broke the jaw of defendant. The blow causing the broken jaw was found to be on the left side of defendant’s face. He was right-handed and testified he fired the gun from his hip. The defendant’s wife did not testify. The record reveals that she is mentally deficient; moreover, there is no reason to believe she saw the homicide.
*125 We have approved the “Weathersby rule” in several recent cases. See May v. State, 199 So.2d 635 (Miss.1967); Wilson v. State, 199 So.2d 445 (Miss.1967); Kinkead v. State, 190 So.2d 838 (Miss.1966); Aven v. State, 246 Miss. 839, 152 So.2d 924 (1963).
We are of the opinion that the alleged discrepancies in the testimony are insufficient to overcome the presumption of innocence and the testimony of the defendant showing self-defense. The defendant was entitled to a peremptory instruction directing the jury to acquit the defendant. The judgment of the trial court will be reversed and the defendant discharged.
Reversed and defendant discharged.
ETHRIDGE, C. J., and PATTERSON, SMITH and ROBERTSON, JJ„ concur.