309 So.2d 857 (1975)
Johnson Y. DEW, Jr.
v.
STATE of Mississippi.
No. 48299.
Supreme Court of Mississippi.
March 24, 1975.
Garner, Whitten & Garner, Hernando, Sandra Gustafson, South Haven, for appellant.
A.F. Summer, Atty. Gen., by Vera Madel Speakes, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and WALKER, JJ.
PATTERSON, Justice:
Johnson Y. Dew, Jr. was tried for the murder of his wife. He was convicted of manslaughter and sentenced to eight years in the penitentiary by the Circuit Court of DeSoto County. He now appeals and urges for reversal the benefit of the Weathersby Rule.
In Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), this Court stated:
... It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge... . 165 Miss. at 209, 147 So. at 482.
This principle has been followed in those cases where the facts have been determined to be within the rule. We have stated that the Weathersby principle is not to be casually applied, but when the facts warrant, it becomes efficacious. Cummings v. State, 271 So.2d 407 (Miss. 1972); Childs v. State, 240 So.2d 611 (Miss. 1970); Cassidy v. State, 233 So.2d 122 (Miss. 1970).
The evidence of the state is that the appellant fatally shot his wife about midnight on April 11, 1972, when no others were present and that immediately thereafter he notified the sheriff's department and summoned an ambulance.
The officers testified that when they arrived at the Dew home, the appellant told them that he had shot his wife and led them to a bedroom where her near-lifeless body was found. While awaiting the ambulance, these officers gave what aid they could to Mrs. Dew and to the appellant who lapsed into shock as a result of the occurrence.
After the injured and ailing parties were removed to the hospital, the officers found a semi-automatic pistol on the floor of the bedroom. Several feet from it there was found the "safety latch" from the weapon. One officer testified by affirmative responses to the questions of the attorneys that the pistol was equipped with two safety features to prevent its discharge once the "hammer" was drawn back. These *858 were the side safety latch and the "lemon squeezer," a part of the handle. He testified that the gun would not fire with the safety latch removed from it. The inference from this testimony, which the jury could find to be true, was that once the hammer was back the safety latch would have to be moved to the "fire" position and the "lemon squeezer" squeezed before a pull of the trigger would cause the gun to discharge.
An autopsy revealed that the decedent had died of a wound from a bullet which had entered her body behind the left shoulder, had traveled downward through the left lung and had come to rest in the twelfth thoracic vertebra. The pathologist found no evidence of powder burns which would have been present, in his opinion, had the weapon been fired within two feet of the victim's body. He testified concerning bruises of recent origin on Mrs. Dew's body which could have formed to a limited degree after death. Of particular significance was a bruise or abrasion to the left knee. In the opinion of the pathologist none of these discolorations was inconsistent with a struggle and fall prior to death. His examination also revealed that the decedent was under the influence of alcohol at the time of her death.
According to the testimony of the appellant, the fatal shot was accidentally fired in a struggle with his wife while he was attempting to disarm her after she had threatened to kill him.
The events preceding the struggle are of some significance since they set the scene for the occurrence and corroborate, to a degree, the testimony of the defendant.
Both Dew and his wife were employed. He worked as a dispatcher for a trucking concern from 11:00 p.m. until 7:30 a.m. His wife worked from 8:00 a.m. to 5:00 p.m. each day. Friday evening appears to have been a time when the parties were at home together.
When Mrs. Dew arrived at her home from work on Friday, April 11, 1972, her husband informed her that they were going out that evening with Mr. and Mrs. Vaughn, their neighbors. However, the Vaughns changed their plans for the evening and when this was related to the appellant's wife, she became angry.
The appellant thereafter visited and rode around with Mr. Vaughn. They returned at about 9:00 p.m. and Vaughn's wife informed the appellant that Mrs. Dew had gone out, leaving her daughter with a neighbor. The Vaughns then visited with the appellant in his home until about 11:00 p.m.
Dew, the only person to testify concerning the subsequent events, stated that he had already retired when his wife returned about midnight. She was intoxicated and struck him several times during an ensuing argument. He attempted to pacify her and at one time she appeared calm, changed into night clothing and went into the kitchen. He returned to bed and some few minutes later his wife came into the bedroom, turned on the lights and renewed the argument. She slapped him and he pushed her away, imploring her to go to her mother's home until the next morning.
He stated that his wife again attempted to strike him, but that he blocked the blow. She then seized him by the neck, scratching him, and he pushed her into a corner of the room. His wife got up cursing him and seized a pistol that was lying on the nightstand in the room and threatened to kill him. He attempted to disarm her and in the struggle was able to get the pistol partially away from her, but she continued to cling to it even though he held it in both hands above his head.
In an attempt to wrest the gun away, he pushed his wife down with his left hand and pulled away. However, in falling, her hands were grasped on the gun in his hand, pulling his right arm and hand from over his head into a downward position. When he pulled back in an attempt to free himself from his wife, the gun accidentally discharged, striking his wife who was then *859 on her knees. He immediately called for an ambulance and notified the sheriff's office.
The appellant's testimony, as we review it, is not controverted in its material particulars by either the physical facts or those of common knowledge. The contradictions, if there be such, are related to slight discrepancies regarding the time the appellant returned from riding around with Vaughn or the reputation of the defendant. Numerous witnesses testified that defendant's reputation for peace and violence was very good, but this was disputed on rebuttal by the mother of Mrs. Dew who, after acknowledging that the defendant loved his wife, gave evidence that he had nevertheless months before struck her, leaving bruises upon her body.
The remaining issue is whether the defendant's version of the affray is reasonable. The path of the bullet from its entry point behind the left shoulder to the twelfth vertebra corroborates the appellant's testimony that his wife was somewhat below him when the shot was fired. The bruise upon the left knee of Mrs. Dew is not inconsistent with the appellant's testimony that the shot was fired from above her body. The absence of powder burns is explained, we think, or at least is not unreasonable, when thought is given to the fact that the extended arm of the normal adult is around two feet or more, the critical distance, according to the pathologist, for the presence of powder burns.
An examination of the weapon shows that when it is held in a normal position and the hammer pulled back, the side safety latch, which is loose, will move into a firing position and the hammer will fall by a pull of the trigger whether or not the handle is squeezed. The examination also reveals that the hammer will fall when the trigger is pulled when the safety latch is removed from the gun, again without pressure being applied to the "lemon squeezer" of the handle. These factors negate the testimony or inference therefrom that a deliberate activation of the side safety latch and the "lemon squeezer" was necessary to fire the gun. This, in our opinion, lends a degree of authenticity to the defendant's version of the occurrence which, when considered in its entirety, is not unreasonable, though tragic.
We conclude, as we think we must, that the trial court erred when it did not sustain the motion of the defendant for a directed verdict at the close of all of the testimony since there is nothing to support the cause of death as being other than an accident.
The Weathersby rule applies, in our opinion, requiring the cause to be reversed and the defendant discharged.
Reversed and defendant discharged.
GILLESPIE, C.J., RODGERS, P.J., and INZER, SMITH, SUGG and BROOM, JJ., concur.