398 So.2d 229 (1981)
Jessie Junior CLARK
v.
STATE of Mississippi.
No. 52627.
Supreme Court of Mississippi.
May 20, 1981.
Roy Pitts, Franklin M. Coleman, Meridian, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, SUGG and LEE, JJ.
LEE, Justice, for the Court:
Jessie Junior Clark was indicted and tried in the Circuit Court of Lauderdale County for murder, Honorable Henry Palmer, presiding. The jury found Clark guilty of manslaughter, and he was sentenced by the trial judge to a term of eighteen (18) years in the Mississippi State Penitentiary. He has appealed from the judgment and assigns four (4) errors in the trial below.
*230 On the 27th day of February, 1980, the appellant, Johnny C. Jackson, and other individuals were in Maggie's Place, a cafe situated in Lauderdale County. Some words ensued between appellant and Jackson, who asked appellant to come outside the building. According to appellant, Jackson cursed him, threatened his life, and advanced toward him in an angry manner. Appellant testified that he drew a pistol from his pocket and pointed the pistol at Jackson, that his thumb slipped off the hammer and the pistol discharged, fatally wounding Jackson. No persons were present at the time of the shooting except appellant and Jackson. Appellant claims self-defense and, also, that the shooting was accidental. Immediately after the pistol discharged, Early B. Lard arrived upon the scene and asked Jackson what was the matter. He testified that Jackson said, "Jessie shot me for nothing." Jackson expired within minutes.

I.
Did the trial court err in permitting introduction of the deceased's statement as a dying declaration?
When Lard first arrived at the scene after the shooting, he saw no blood on or around Jackson and did not know what was wrong with him. Jackson did not say that he knew or thought he was mortally wounded or that he was about to die. The essentials for a statement to constitute a dying declaration are: (1) the wounded person is in extremis, and dies after making the statement, (2) the person realizes that he is mortally wounded, and (3) he has no hope of recovery. In Simmons v. State, 206 Miss. 535, 40 So.2d 289 (1949), the Court said:
"Deceased was lying in road at the scene of the tragedy, and two witnesses for the State testified he said to them, `They hit me with the binders, they pushed me off the truck.' Neither witness claimed that deceased made any statement indicating on his part that he knew or believed death was then and there imminent and impending. One witness said that he, himself, knew it and that the dying man should have known it. That is not the test. The true test is that `at the time the declaration was made, the deceased believed that he was going to die and had no hope whatever of recovery, and must be made under the realization and solemn sense of impending death.' Syllabus McNeal v. State, 115 Miss. 678, 76 So. 625." 206 Miss. at 538, 40 So.2d at 291.
The Court discussed dying declarations in Houston v. State, 246 Miss. 77, 149 So.2d 331 (1963), and stated that the question as to whether a declaration is to be admitted as being a dying declaration is not what other people thought concerning whether or not the deceased would die but whether the deceased himself thought that he was going to die. Quoting from Lea v. State, 138 Miss. 761, 103 So. 368 (1925), the Court in Houston further stated:
"`A dying declaration is made without the sanctity and without an opportunity to cross-examine the declarant. To take the place of that sanctity and that right there must be an undoubting belief in the mind of the declarant, at the time the declaration is made, that death is upon him. If it shall appear in any manner that there was hope of recovery, however faint it may have been, still lingering in his breast, the required sanctity is not afforded, and the statement cannot be received. The belief by the declarant that he may ultimately die as a result of this injury is not sufficient to authorize the admission of his statement as a dying declaration. The predicate must exclude all hope of life. It must reach the point of absolute certainty in the mind of the declarant. All hope must be gone. He must feel sure that the finger of death is upon him.'" 246 Miss. at 82, 149 So.2d 333.
The knowledge of impending death may be inferred from the nature and extent of the wound inflicted upon the victim. The Court reaffirmed the rule in Fulton v. State, 209 Miss. 565, 47 So.2d 883 (1950) with the following language:

*231 "It is well settled that the sense of impending death which a dying person must have had in order to render a dying declaration made by him admissible in evidence may be inferred from the nature of the wound or the state of his illness, without any expressed declaration to show that he was sensible of impending death. It is clear, however, that this rule does not mean that the inference may be drawn from the mere fact that the wound, in the opinion of the man of science, was in point of fact mortal but means that the nature of the wound or the illness should have been such as to affect the knowledge and control the opinion of the dying person himself, as to the danger to which he stood exposed." 209 Miss. at 569, 47 So.2d at 885-886.
In the present case, there is no indiction whatsoever that the deceased knew or thought he was mortally wounded and about to die. The bullet, according to Dr. Sergio Gonzales, the pathologist who performed the autopsy, severed the aorta, which caused bleeding into the chest cavity, resulting in death within "minutes." There was no obvious wound at the time Lard saw Jackson and it is probable that Jackson did not know the seriousness of his condition.
The trial judge sustained the objection to the statement until Dr. Gonzales testified. He then admitted same on the basis of the doctor's testimony that there was massive bleeding internally which resulted in death. The trial judge overlooked the essentials and requirements of establishing a dying declaration. The statement was highly prejudicial for the reason that the words "for nothing" indicate that Jackson was doing nothing which would justify appellant using force to protect himself. Jackson's lips were sealed in death at the time of the trial and he could not be examined by the defendant concerning the statement. We are of the opinion that the statement did not constitute a dying declaration, was highly prejudicial, and constitutes reversible error.

II.
Did the trial court err in granting Instruction S-2 and in granting Instruction C-2a?
Appellant contends that Instruction S-2 is vague and confusing, and is an abstract instruction, which places the burden of proof upon the defendant rather than the State on the issue of self-defense. It is unnecessary to set forth the instruction here, but, suffice it to say, the instruction was approved by the Court in Bright v. State, 349 So.2d 503 (Miss. 1977).
Appellant also contends that the Instruction C-2a is confusing and contradictory and does not properly state the elements of proof for manslaughter, fails to take into account accident, does not require negating of defenses, and omits the words "heat of passion for arguing." This instruction follows practically word-for-word Instruction 114.12 of the Mississippi Model Jury Instructions (1975) for manslaughter. While the instruction is not a "model" as the word implies, and could have been more clearly drawn, it was not confusing and contradictory and submitted the elements of manslaughter to the jury in accord with evidence in the case.
Since the case is being reversed for a new trial on the improper admission of testimony, it is not necessary for us to discuss the assignment of error relating to juror misconduct which will not occur on retrial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.