# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00159-SCT

*ARDES LEE JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2007 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN ALLEN SUBER |
| | BOYD P. ATKINSON |
| | GLENN S. SWARTZFAGER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED AND |
| | APPELLANT DISCHARGED - 07/31/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    The longstanding, seldom-applied, legal doctrine which we are required to address in the case sub judice is commonly referred to as the "*Weathersby* rule." This appellation originated from a decision of this Court seventy-five years ago. *See Weathersby v. State*, 165 Miss. 207, 147 So. 481 (1933). It is neither unique nor novel. The principle involved has been accepted in our jurisprudence for nearly a century. *See Houston v. State*, 117 Miss. 311, 78 So. 182 (1918).

¶2.     The conviction being appealed resulted from Ardes Lee Johnson's third trial related to the demise of Dennis Terrell Davis. Johnson was first tried for, and convicted of, murder in May 2004. However, he was granted a new trial based upon the trial court's error in failing to charge the jury properly.[1] *See Johnson v. State*, 908 So. 2d 758 (Miss. 2005). On November 29, 2005, following his second trial, the circuit court filed a "Trial Judgment" granting Johnson's motion for mistrial and request for a bond after the jury was unable to reach a verdict. In December 2006, Johnson was once again tried. At the conclusion of the State's case, Johnson moved for a directed verdict based upon insufficiency of the evidence, which was denied. The same motion was again offered and denied when Johnson rested. He was then convicted of manslaughter and sentenced to twenty years in the custody of the Mississippi Department of Corrections ("MDOC"). Following denial of his post-trial motions, including his motion for judgment notwithstanding the verdict ("JNOV"), Johnson filed his notice of appeal.

¶3.     This Court finds that the facts and circumstances surrounding the stabbing death of Davis compel application of the *Weathersby* doctrine. *See Weathersby*, 147 So. at 482. "Taking the transcript of the evidence by the four corners . . . the [S]tate failed to meet the burden of proof," for "the record does not show beyond reasonable doubt and to a moral certainty that [Johnson] is guilty." *Houston*, 78 So. at 183. As Johnson's eyewitness account of the stabbing, and Shirley Landrum's eyewitness account of the events leading up to the altercation and its aftermath, were reasonable and not "substantially contradicted in

---

[1]Johnson was represented by other counsel. The *Weathersby* rule was not raised in that appeal.

material particulars[,]" the circuit court was required to accept it as true. *Weathersby*, 147 So. at 482. Accordingly, this Court concludes that the evidence was insufficient to submit to a jury for verdict and Johnson was "entitled to a directed verdict of acquittal." *Blanks v. State*, 547 So. 2d 29, 33 (Miss. 1989).

## FACTS

¶4. Forty-seven-year-old Johnson had no prior criminal history. He was previously employed as a security screener at O'Hare Airport in Chicago, Illinois.[2] In late June 2003, Johnson traveled to Shelby, Mississippi, with his aunt and uncle to attend the funeral of his grandmother. During the visit, Johnson, Landrum, and several other individuals helped another of Johnson's aunts move out of her apartment at the Church Garden Apartment complex.

¶5. Johnson testified that on July 1, 2003, Davis "came by [the apartment of Johnson's aunt] a total of five times, and he stopped me in the streets twice." It is undisputed that Davis initiated seven separate confrontations with Johnson prior to the altercation which occurred in the early morning hours of July 2, 2003, resulting in Davis's death. Describing one of the encounters on the street, Johnson testified that Davis "walked up to me and was agitated. He was sweating. His eyes were big. He was breathing hard." In another instance, Johnson "was taking some objects out to [a] car and [Davis] ran across the yard and went in [the apartment of Johnson's aunt]." At 9:47 p.m., approximately two hours before the fatal fray, Johnson called the Shelby Police Department because Davis "had been beating on the door

---

[2]Johnson had resigned in April 2003 "to have surgery[.]"

3

and peeping in the windows and he had came and made to me what was threatening . . . remarks and he . . . grabbed the door." As the result of the phone call, the police department dispatched Officer Gwendolyn Russell to investigate. Officer Russell later was dispatched to investigate the stabbing.

¶6.    After finishing packing shortly before midnight, Johnson and Landrum,[3] Davis's girlfriend, began walking to a convenience store to buy some beer. Out of fear generated by the prior encounters with Davis, Johnson decided to carry a knife with him because:

> after what had happened throughout the day, I . . . didn't feel like I should be walking around without . . . protection. . . . [A]nything could happen. I didn't know [Davis]. I didn't know what he might do or who he knew. . . . [F]rom the way . . . he was acting and everything, even though the police came, he still could have said something to his friends, family or something like that.

Landrum testified that while walking, "I seen [Davis's brother,] Chris Davis. He was parked by his sister's house with some guy . . . with a hood on his head – I don't know who he was – and [Davis] in the back." According to Landrum:

> [w]hen we started walking down the street, they gradually pulled up . . . coming out of Church Garden [Apartments], turned the way we was walking, and [Davis] raised his head up and he ducked back down. And they made . . . a left turn on Martin Luther King [Drive]. Then . . . a right turn on Hearn [Street]. Then . . . another right toward the park. . . . [Davis] jumped out of the car . . . and ran back on Martin Luther King [Drive].

Davis came toward them quickly,[4] cursing as he approached, bouncing on his toes, and "ready to fight . . . ." Davis then struck Landrum in the face with an object. Johnson pleaded with Davis not to hit her again and stepped between them. Landrum began walking off.

_____

[3]More than twenty years before, Johnson and Landrum had a romantic relationship.

[4]According to Landrum, Davis "was walking kind of fast. He ran. He ran when we got to the street and he started walking. But he was coming fast."

Davis then turned toward Johnson and made a swinging motion with a "dark" weapon in his hand. In response, Johnson stabbed him one time.[5] Davis "stepped back a couple of steps and he slipped on the curb and fell." As Davis was lying in grass abutting the curb, Johnson "advised him to . . . stay down because he was hurt." Disregarding that advice, Davis "got up and ran out into the street . . . ." Landrum, who had fled a short distance, did not witness the stabbing. Davis then cried out for her and she returned, finding Davis lying in the middle of Martin Luther King Drive.

¶7.     Johnson was near the scene "for several minutes because . . . there was . . . a trailer house there. I tried to get those people to call the 911. They wouldn't respond. So I went to . . . [my aunt's apartment] to call myself." A crowd then gathered around Davis, including his brother, Chris. Later that morning, Johnson, after delaying his planned departure to Chicago "to get more information on [Davis's] condition[,]" returned home with his aunt and uncle in a vehicle they had rented for the trip. Davis subsequently died.

¶8.     Johnson was subsequently indicted for the murder of Davis. Following the third trial, the jury convicted Johnson of manslaughter, and he was sentenced to twenty years in the custody of the MDOC. After denial of his post-trial motion for a new trial or JNOV, Johnson filed his notice of appeal.

---

[5]Photos introduced reveal a wound to Davis's left side, estimated by a witness to be slightly below the bottom of the left pocket of a dress shirt.

5

## ISSUE

¶9.     Finding the following issue case-dispositive, this Court will consider only:

(1) Whether Johnson was entitled to a directed verdict of acquittal as a matter of law pursuant to ***Weathersby***.

## ANALYSIS

¶10.    In 1933, the ***Weathersby*** Court announced:

[i]t has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, *unless substantially contradicted in material particulars* by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

***Weathersby***, 147 So. at 482 (emphasis added).  This rule:

is completely established, and those who over a long period of time are experienced in the observation of nisi prius trials will with general accord agree that the performance of the duty by this court to maintain that doctrine without departure therefrom, and firmly *where the record requires it*, will attain the ends of justice in more cases than if the rule were otherwise or were relaxed.

***Id***. (emphasis added).  The ***Weathersby*** "rule is alive and well and living in the courtrooms of this state." ***Heidel v. State***, 587 So. 2d 835, 839 (Miss. 1991) (citations omitted).  While "the ***Weathersby*** principle is not to be casually applied, . . . when the facts warrant, it becomes efficacious." ***Dew v. State***, 309 So. 2d 857, 857 (Miss. 1975).  Furthermore, "[w]here  the ***Weathersby*** rule applies and the defendant's version affords an absolute legal defense, the defendant is entitled to a directed verdict of acquittal." ***Green v. State***, 631 So. 2d 167, 174 (Miss. 1994) (citing ***Blanks***, 547 So. 2d at 33).  *See also* ***Pritchett v. State***, 560 So. 2d 1017, 1020 (Miss. 1990) (the last time this Court applied the rule to require the

6

discharge of a defendant, wherein we held "the trial court erred in failing to direct a verdict for [Pritchett]."); *Dew*, 309 So. 2d at 859 ("[t]he *Weathersby* rule applies, in our opinion, requiring the cause to be reversed and the defendant discharged."); *Cummings v. State*, 271 So. 2d 407, 409 (Miss. 1972) (*Weathersby* rule applicable; Cummings discharged); *Childs v. State*, 240 So. 2d 611, 615 (Miss. 1970) (*Weathersby* rule applicable; Childs discharged); *Lomax v. State*, 205 Miss. 635, 642, 39 So. 2d 267, 269 (1949) ("the *Weathersby* case is clearly applicable under the facts of the case at bar, and . . . there should have been a directed verdict in favor of the defendant as requested."); *Westbrook v. State*, 202 Miss. 426, 435, 32 So. 2d 251, 253 (1947) (*Weathersby* rule applicable; Westbrook discharged). The applicability of the *Weathersby* rule is a determination for the court, not the jury, *see Green*, 631 So. 2d at 175 (citing *Null v. State*, 311 So. 2d 654, 658 (Miss. 1975)), in that "*Weathersby* . . . is nothing more than a particularized version of our general standards according to which courts must decide whether in a criminal prosecution the accused is entitled to a judgment of acquittal as a matter of law." *Jackson v. State*, 551 So. 2d 132, 136 (Miss. 1989) (citations omitted).

¶11.   Conversely, we are fully cognizant that there can be circumstances when the defendant and/or defendant's witnesses are the only eyewitness to the homicide and the *Weathersby* rule would not apply. For example, if the defendant or the defendant's eyewitnesses' testimony satisfies all the elements of murder or manslaughter, the defendant would not be entitled to a directed verdict of acquittal, as their testimony would be the basis for a valid conviction. Furthermore:

this rule has no application where the defendant's version is patently unreasonable, or contradicted by physical facts. Where the defendant is the only eyewitness to a slaying, his version must be reasonable and credible before he is entitled to an acquittal under the rule.

And, there is still another circumstance which still precludes the application of the *Weathersby* rule, and that is where the accused, following the slaying, gives conflicting versions of how the killing took place, or initially denies the act. . . .

In those cases in which the defendant is the only eyewitness to the slaying, and in which the *Weathersby* rule is inapplicable (i.e., the defendant does not secure a directed verdict of acquittal), it then becomes a jury issue as to whether to believe or not believe the defendant's testimony of how the slaying occurred, and to either convict or acquit.

*Blanks*, 547 So. 2d at 33-34 (citations omitted). Such is not the case here.

¶12. Having fully considered when *Weathersby* is inapplicable, we find the facts and circumstances before us bear striking similarities to *Weathersby*. In *Weathersby*, there were two eyewitnesses to the incidents leading up to the homicide.[6] *See Weathersby*, 147 So. at 482. Moreover, their testimony, along with the "pertinent circumstances which corroborated them," sufficiently established a case of self-defense so as to warrant Weathersby's discharge. *Id*. Specifically:

[t]he appellant and his wife [Johnson and Landrum[7]] . . . appeared to have been considerably *frightened* as the *deceased* [Davis], *who had . . . been to the home* of appellant [the apartment of Johnson's aunt] . . . *previously*, . . . was . . . *abusive* to appellant's wife [cursing at and striking Landrum], again *approached* . . . with a pistol [dark weapon] and with renewed threats had arrived within a few feet . . . when he was shot [stabbed] by appellant [Johnson].

---

[6]However, in that case both (husband and wife) witnessed the homicide. *See Weathersby*, 147 So. at 482.

[7]In paragraph 12, brackets within the block quotes note the equivalent in this case.

*Id*. (emphasis added).  Likewise, ***Houston***, 78 So. at 182, a case relied upon in ***Weathersby***,[8]

offers an uncanny factual likeness, including location, i.e., Bolivar County.  The defendant

in ***Houston*** testified that the decedent:

> rushed upon behind appellant and her husband [Johnson and Landrum], assaulted appellant [Landrum], . . . that when Annie Brandon attacked . . . appellant's husband [Landrum] ran away and left appellant [Johnson] to defend herself.  Appellant [Johnson] then says that she [he] struck the deceased once with a very small knife, the same knife which she had in her hand peeling potatoes when she left her own home.  Appellant [Johnson] denies that she [he] was mad when she [he] left her own home [his aunt's apartment] to go to Annie Brandon's house [the convenience store], and denies any malice or intention to kill and murder, protesting that what she [he] did was in self-defense.[9]

*Id*. at 183.  This Court found that "[t]aking the transcript of the evidence by the four corners,

there is nothing to connect the defendant with the killing except the testimony of the

defendant herself . . . ."  ***Id***.  Based thereon, this Court determined that the State had failed

to meet its burden of proof as the requirement of "physical facts or circumstances

inconsistent with the statements or testimony of the accused[,]" was lacking.  ***Id***.  This Court

then concluded that "[t]he account which the defendant gives is not upon its face an

unreasonable story.  She is the only eyewitness testifying.  Her testimony, unless materially

contradicted by the physical facts, should not be utterly ignored."  ***Id***.

¶13.    Johnson's reasonable eyewitness account, not "substantially contradicted in material

particulars[,]" coupled with the "pertinent circumstances which corroborated" it (i.e., the

seven previous encounters with Davis, the earlier phone call to police, and the testimony of

---

[8]Cited therein for "the established rule in this state."  ***Weathersby***, 147 So. at 482.

[9]This Court added that "[t]here is no evidence of any previous threats or difficulty."  *Id*. at 183.

Davis's girlfriend, Landrum), collectively sustain a sufficient case of self-defense. *Weathersby*, 147 So. at 482. As this version "must be accepted as true," *id*., in the case sub judice it provides "an absolute legal defense," *Green*, 631 So. 2d at 174, to either murder or manslaughter. "Taking the transcript of the evidence by the four corners," *Houston*, 78 So. at 183, the *Weathersby* rule is clearly applicable, as the necessary elements for either a murder or manslaughter conviction were lacking. Accordingly, Johnson was "entitled to a directed verdict of acquittal." *Blanks*, 547 So. 2d at 33.

¶14. The rule of law requires its application. As the *Weathersby* doctrine has been part of our body of law for nearly a century, it must be applied. Johnson's eyewitness account of the stabbing and Landrum's eyewitness account of the events leading up to the altercation and its aftermath were reasonable and not "substantially contradicted in material particulars[.]" *Weathersby*, 147 So. at 482. Therefore, the circuit court was required to accept it as true. *See id*. Based thereon, the evidence was insufficient to submit to a jury for verdict and Johnson was "entitled to a directed verdict of acquittal." *Blanks*, 547 So. 2d at 33.

**CONCLUSION**

¶15. Based upon the applicability of the *Weathersby* principle, Johnson's eyewitness account of the stabbing must be accepted as true, and we conclude that the evidence was insufficient to submit to a jury for consideration, as Johnson was "entitled to a directed verdict of acquittal." *Blanks*, 547 So. 2d at 33. Accordingly, the judgment of the Circuit Court of Bolivar County is reversed and rendered. Appellant Ardes Lee Johnson stands discharged.

¶16.  **REVERSED AND RENDERED AND APPELLANT DISCHARGED.**

**WALLER AND DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON AND LAMAR, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  SMITH, C.J., NOT PARTICIPATING.**