## BOWEN *v*. STATE.

(Division B. Nov. 7, 1932.)

[144 So. 230. No. 30136.]

Colson & Guy, of Greenwood, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **T. A. Guy**, for appellant, and by **W. D. Conn, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Mrs. Josie Bowen, was indicted and convicted of the murder of Melvin McFerrin, and was sentenced to life imprisonment.

There were no eyewitnesses to the killing, and the proof of the state, at its strongest, showed that the deceased, McFerrin, was killed at the home of the appellant within a short time after a witness for the state had seen McFerrin approaching the home of the appellant, and that he turned at the rear thereof and disappeared from view. The road ran to the rear of the appellant's home and within two or three feet of the back door of her house.

The deceased, Melvin McFerrin, was first seen after the shooting by other people, with his feet on the grass at the edge of the road next to the house, and his body lying in a northwesterly direction along the road. He was shot in the breast; the shot having ranged downward, coming out in the rear about the lower part of his shoulder blade.

The deceased, the appellant, and her husband, were neighbors, and lived on the same plantation. There were two other families living near the house of the appellant.

After the shooting, the appellant came out of the front of the house with a gun and some shells in one hand, and her baby in the other arm, and went in the direction of the nearby house of her sister and her sister's husband, at which place the husband of the appellant was at that time. When asked what was the matter, she stated to these parties that she had killed the deceased, that she had to do it, and that she was going to the sheriff and surrender. This latter part of her statement was not permitted to go to the jury. The appellant and her husband then went to the sheriff and she surrendered.

The only facts pertaining to the actual killing and the reason therefor were related by the appellant. According to her statement, the deceased had been attempting to show her attentions and flirt with her, and had gone to her house and conducted himself in a way of which she did not approve, in the absence of her husband, and, on his first visit in which he had so conducted himself, her sister was present; that appellant had asked him

to leave and not to come to her home when her husband was not there; that he continued to annoy her with his attentions when passing and to conduct himself in a way of which she did not approve; that on a former occasion, after he had been warned to stay away, he came to her house, when she was alone, and proposed sexual intercourse with her, which proposition she rejected and ordered him to leave, stay away, and never return. Some days after this happened, she reported the matter to her husband and asked him to do something about it. It appeared in the evidence, but was not permitted to go to the jury, that her husband had an interview with the sheriff in regard to the matter, but the statements he made to the sheriff were not in evidence, except that the, sheriff offered to testify that there was some intimacy between McFerrin and Mrs. Bowen, appellant, and offered to state that he went to see McFerrin, but he was not at home, and that he left word with McFerrin's mother for him to stay away from the appellant and to let her alone.

The appellant testified that, on the occasion of the killing, McFerrin came to the back door, entered her house, and came into the room where the appellant was patching some pants for one of her children, and again solicited her to commit adultery with him; that he took her by the arm, and she ordered him to leave, and that he stated he would not leave until the appellant yielded to his wishes; that she jerked herself away from him and went into another room where the shotgun was with which the killing was done, took the gun, and ordered him to leave; that he stated he would not go, that she did not have the nerve to shoot, and that she thereupon brought the gun into shooting position and told him to leave and that she meant for him to leave; that he stepped out of the door on the north end of the building and went to the south door near which she was standing and started to enter, stating that he would get her yet, and that as he reached up to catch the door she stepped back

and shot him; that, when she fired the shot, he staggered back and fell, and that she then went into the living room where some gun shells were on the mantelpiece, took some shells and her baby, and started to the home of her sister. She further testified that her husband had gone to her sister's house to shave, and that when she came near that he and her sister met her and she gave the baby to her sister, and that she and her husband went on and surrendered to the sheriff.

There is no explanation or any reason for the killing other than that given by the appellant. Her sister, as a witness, supported her statement of McFerrin's conduct on the first occasion, and sustained appellant's statement as to what transpired at that time in all respects.

The appellant's testimony is nowhere contradicted in so far as the deceased's, McFerrin's, conduct and his visits are concerned.

In this situation of the evidence, the court granted an instruction for murder, in the usual form of the verdict, and also gave an instruction as follows: ''The court instructs the jury for the State that the law tolerates no excuse and accepts no justification for the shooting of one individual by another upon a plea of self defense, unless it be reasonable so to do, in order to save the life of the individual who fires the shot, or to save her from great bodily harm, at the very time the shot was fired that inflicted the wound, and in this case, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Mrs. Josie Bowen, wilfully, feloniously and of her malice aforethought, shot and killed the said Melvin McFerrin, at a time when she, the said Mrs. Josie Bowen, was not in any immediate danger, real or apparent, of suffering great bodily harm at the hands of said Melvin McFerrin, then the defendant, Mrs. Josie Bowen, is guilty as charged, and it is the sworn duty of the jury to so find.''

It will be seen from reading this instruction that the jury were told there is no justification in law for the

shooting of one individual by another, upon the plea of self-defense, unless it was done in order to save the life of the individual firing the shot, or to save her from great bodily harm, or unless the individual was then in any immediate danger, real or apparent.

We think the evidence in this record demonstrates that it was error to have given an instruction for the state upon a murder charge. The evidence was insufficient to support a murder charge, because the explanation given by the appellant is not contradicted, either directly, or by fair inference from the testimony. It must therefore be accepted as disclosing the true facts. Patty v. State, 126 Miss. 94, 88 So. 498.

We think the instruction was also erroneous because its latter part entirely ignores the defense of habitation. A person is entitled, under the law, to defend a home with force against unlawful entries, and to prevent crimes from being committed therein. 30 C. J. 83, sec. 262. Even if a killing was not lawful in such a case, it would be reduced from murder to manslaughter if the killing was in defense of a home. Section 262, 30 C. J. title "Homicide," reads as follows: "It is a general rule, expressly affirmed by statute in some jurisdictions, that a person is justified in taking life in defense of his habitation where it is actually or apparently necessary to do so in order to repel another person who attempts to enter in a forcible or violent manner for the apparent purpose of committing a felony therein upon either person or property or of inflicting great bodily harm or of assaulting or offering personal violence to a person dwelling or being therein. The right to take life in a proper case in defense of habitation may be exercised not only by the owner or occupant of the house, but also by his servants and guests. And the persons who may be protected include guests. The principle that the taking of life in defense of habitation is excusable or justifiable is not applicable to a common brawl for which the accused is mainly responsible, or to a case where deceased is on

a public highway in front of accused's house and is not attempting to enter or to make any forcible attack or invasion. The homicide is not justifiable where although deceased is attempting at the time unlawfully to enter accused's dwelling house, the killing is done with malice and ill will and not for self protection or protection of the habitation.''

In section 264, 30 C. J., p. 84, it is said that the right to take life in defense of one's dwelling is subject to the qualification that the danger must be immediate, and that the question is more one of fact than of law, that the attempt must be manifest, and that a demonstration or threat will not justify a homicide by the occupant, and that, ''In order that a homicide may be justifiable as in defense of habitation, it is not essential that there be peril of death or great bodily harm, as a violent attempt to enter with the apparent purpose of assaulting or offering personal violence to an inmate, justifies defense of the habitation.''

Our own statutes provide such justification in clause e of section 988, Code of 1930, wherein it is provided that the killing of a human being shall be justifiable. ''(e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling-house in which such person shall be.''

And by section 995, Code of 1930: ''Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.''

Section 991, Code of 1930, provides that it shall be manslaughter when a human being is killed without malice, by procurement or negligible act of another, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to felony.

In the case at bar, on the evidence in this record, the appellant was in her home, where she had a right to

be, and she had a right to exclude the deceased therefrom, and to use any force necessary to eject him therefrom and to prevent his re-entry into her home after being so ejected.

It is manifest, of course, that the appellant, being a woman, could not, by mere physical strength, eject the deceased, or prevent his re-entry after he had been ordered out, or prevent his entry in the first instance after he had been warned not to enter her home.

The facts disclosed in the evidence, which are not disputed, show that the deceased entered the appellant's home as a trespasser after being ordered never to enter again, and also that his entrance was for an unlawful purpose; and his conduct, as disclosed by the evidence, warranted the appellant in believing that he intended to commit an assault upon her when he should enter. Her testimony as to what happened, and how it happened, warranted her in resorting to the shotgun as a means of ejecting the deceased, and as a means of protecting herself and her home from violation.

The home is one of the most important institutions of the state, and has ever been regarded as a place where a person has a right to stand his ground and repel, force by force, to the extent necessary for its protection. In early English law, it was a man's castle to which he might retire and defy the whole world. Officers could not enter, but must wait outside to even serve processes of arrest upon the occupant of the house. A great English statesman in an outburst of oratory has declared that a man's home is his castle wherein the King could not enter against the owner's consent; that the winds might enter, the rain might enter, but the King and his officers could not enter it; and that, no matter if the home was so poor as to be insufficient to exclude the elements, it remained a man's stronghold.

Since that time, the law has authorized officers to enter houses for the purpose of making arrests when felonies have been committed, or when they have processes for

that purpose; but there must be a lawful purpose, and the officers must be armed with the authority of the law to make an entry.

The deceased had no right to enter this home. He knew that the appellant was the wife of another, and she had a right to exclude him, and had done so. His purpose could not have been lawful, and the killing in this case could not be murder under the facts disclosed in the record.

The judgment must be reversed, and the cause remanded.

Reversed and remanded.