## LEE *v.* STATE

No. 40765          February 10, 1958          100 So. 2d 358

*T. M. Bishop, A. W. McRaney,* Magee, for appellant.

*G. Garland Lyell, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

HOLMES, J.

The appellant was charged by indictment in the Circuit Court of Simpson County with the murder of Edward Coleman. He was convicted of manslaughter and sentenced to serve a term of twenty years in the State penitentiary. He appeals from the judgment of conviction, and, among other grounds of alleged error assigned, he specifically assigns as error the action of the trial court in refusing his request for a peremptory instruction. In view of the conclusion which we have reached, we shall discuss only this specific assignment.

The appellant's claimed right to a peremptory instruction is predicated upon the contention that he shot and killed the deceased in necessary self-defense. As to the material aspects of the case, the evidence is not in substantial conflict.

The homicide occurred at the home of the appellant just before dawn on the morning of March 24, 1956. It manifestly stemmed from what the deceased regarded as undue familiarity existing between the appellant and the deceased's wife. This is apparent from the testimony of the Town Marshal of Magee, who testified that about a week before the killing the deceased came to him and other officers and requested that they try to prevail upon the appellant to let the deceased's wife alone. The Marshal further testified, although it was denied by the appellant; that he contacted the appellant and told him that if he didn't let the deceased's wife alone there would be trouble and one of them would be killed, and that the appellant replied: ''I ain't going to mess with that woman none, and if he messes with me and don't let me alone, I am going to kill him.''

The deceased and his wife, Hazel Mae Coleman, lived a short distance west of the Town of Magee. At about noon of the day preceding the killing, Hazel Mae left her home and went to the Town of Magee, where she met Merline Nichols at the Ideal Cafe. After about thirty minutes in the Ideal Cafe, Hazel Mae and Merline went to the latter's home just north of Magee, where they remained until about seven o'clock in the evening when they returned to the Ideal Cafe in Magee and later went to the movies. They met Christine Wilson at the Ideal Cafe, and after they returned from the movies, Merline went home and Hazel Mae joined Christine and Chirstine's husband and they drove in Wilson's car to Mt. Olive and went to Lillie Mae's Cafe and got some beer. They remained at Lillie Mae's Cafe until about 10:30 P. M., and then went to Barnes' Shop or Cafe at Sanatorium, arriving there at about 11 o'clock P. M. There they joined John L. McNair and Sonny Grant and indulged in some drinking of whiskey. They then left about 12:30 o'clock A. M., and at Hazel Mae's request, went by the appellant's home to request him to go with them to Jackson. The ap-

pellant worked on the farm of Mr. H. L. Brooks, Jr. He had a small cotton patch and drove a truck hauling and delivering fertilizer. He had worked that night until about 11:30 o'clock P. M., and returned home and fixed his supper and took a bath and went to bed and to sleep. He was awakened by the sounding of a car horn on the outside. Those outside in the car were Hazel Mae and her companions. He was requested to go with them to Jackson. At first he refused and then consented to go, and he dressed and joined the others. The appellant said he drove the car as the others were drunk. They went as far as D'Lo and there got some gas, and at that point abandoned their trip to Jackson and returned to the appellant's house, where the appellant and Hazel Mae got out and the others went on. The appellant entered his house, followed by Hazel Mae. When Christine Wilson reached home she found Edward Coleman there and he inquired of her where his wife was and she told him that they had left her at the appellant's house. When the appellant and Hazel Mae entered the appellant's house there was no one there except Jonn McCollum, who was a fellow laborer on the Brooks farm, and he was asleep. Hazel Mae entered the appellant's bedroom and went to bed in the appellant's bed. Later the appellant got in bed with her, and after remaining there for awhile got up and went to bed in another bed in the room. Both of them went to sleep. The back door of the house was latched on the inside with a piece of wire wrapped around a nail driven into the door facing.

According to his testimony, the appellant was awakened by a loud noise as though someone was breaking in the back door. The appellant further testified that he got up and got his shotgun and went toward the back of the house and saw in the kitchen the bulk of a man coming toward him. He asked who he was and the man replied: "You - - - -, I will show you who it is, I am going to kill you." The appellant testified that the man was

coming toward him and appeared to have ''something'' in his hand, and believing that the man was about to do him some great bodily harm or kill him, he fired at him one time and then fled barefooted and in his underwear to Mr. Brooks' house and told him that he had ''downed'' someone in his home. Appellant testified that he did not know whom he shot. Hazel Mae testified that she heard no noise and did not hear the shot, but was awakened by the appellant who told her that he had shot Edward. McCollum was awakened by the noise and from his position, saw the appellant when he fired but did not see the person at whom he was shooting. Thus the appellant was the only eye witness to the entire affray. Officers who investigated the scene testified that the back door had been broken open, and that the body of the deceased was found lying in the kitchen. He was shot in the forehead. No weapon was found on or about the person of the deceased. They said that the deceased did not have his shoes on, and that his shoes were found near the back door. It is a reasonable deduction from the evidence that the deceased, having learned from Christine Wilson that his wife was at the appellant's home, went to the house and forceably entered through the back door for the purpose of getting his wife.

The testimony of the appellant that he was awakened in the early morning hours by the noise of someone breaking in his home, and that he seized his gun and went to the back of the house and there saw the form of a man coming toward him, and that he asked who he was, and the man replied, ''You - - - - -, I will show you who it is, I am going to kill you,'' and that the man continued to advance toward him, and that then apprehending that the man was about to do him some great bodily harm or kill him, he fired in defense of his own life, is uncontradicted by any credible witness or witnesses, the physical facts or facts of common knowledge. This testimony, if reasonable, must, therefore, be ac-

cepted as true. In the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, this Court said:

"It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918; Walters v. State, 153 Miss. 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150."

That this testimony is reasonable under all of the facts and circumstances of this case, **(Hn 3)** and that the facts as disclosed by the testimony afforded reasonable grounds for the appellant to apprehend that at the time he fired upon the deceased he was in danger of suffering great bodily harm or death at the hands of the deceased, cannot be doubted. The deceased had forceably entered the home of the appellant by breaking open the back door in the early morning hours before dawn when the house was dark. The noise aroused the appellant from sleep. He seized his gun and went to the back of the house to investigate the cause of the disturbance. There he discovered in the darkened kitchen the "bulk" of a man advancing toward him with "something" in his hand. Upon inquiring of the intruder who he was, the intruder cursed him and told him he would show him who he was and that he was going to kill him. Certainly it is entirely credible that the deceased did and said just what the appellant stated that he did and said, when it is considered that the deceased was an intruder in the home and had gained entry therein by force in the early morning before daylight. Under the circumstances the appellant, as a reasonable man, was wholly justified in apprehending that he was in imminent danger of great

bodily harm or death at the hands of the intruder, and in firing upon the intruder in defense of his habitation and of his own life.

In the case of Bowen v. State, 164 Miss. 225, 144 So. 230, this Court quoted with approval the following from 30 C. J., Homicide, Sec. 262:

"It is a general rule, expressly affirmed by statute in some jurisdictions, that a person is justified in taking life in defense of his habitation where it is actually or apparently necessary to do so in order to repel another person who attempts to enter in a forcible or violent manner for the apparent purpose of committing a felony therein upon either person or property or of inflicting great bodily harm or of assaulting or offering personal violence to a person dwelling or being therein."

In the same case the Court said: "The home is one of the most important institutions of the state, and has ever been regarded as a place where a person has a right to stand his ground and repel, force by force, to the extent necessary for its protection."

The fact that the deceased was not armed is not essential in the determination of this case. The appellant had the right to anticipate the acts of the intruder and to act upon what then reasonably appeared to be necessary for the protection of his life. Lomax v. State, 205 Miss. 635, 39 So. 2d 267; Scott v. State, 203 Miss. 349, 34 So. 2d 718, and cases therein cited.

After a close scrutiny of the entire record, we are of the opinion that the uncontradicted credible evidence establishes a clear case of justifiable homicide, and that the peremptory instruction requested by the appellant should have been granted. Accordingly, the judgment of the court below is reversed and the appellant discharged.

Reversed and appellant discharged.

*Roberds, P. J.,* and *Lee, Arrington & Ethridge, JJ.,* concur.