RODGERS, Presiding Justice.
The appellant was charged with murder by indictment of the Grand Jury of Amite County, Mississippi, for the alleged killing of Lonnie Simpson, Jr. The charge was reduced to manslaughter at the end of the state’s testimony. The jury returned a verdict of guilty, and the trial judge sentenced defendant to serve a term of twelve (12) years in the Mississippi State Penitentiary. He has appealed to this Court and now contends that the trial court should have granted the defendant’s request for an instruction directing the jury to find the defendant not guilty. It is said that the defendant’s motions for a judgment of not guilty, non obstante veredicto, and for a new trial were wrongfully denied by the trial court. Finally, it is contended that rebuttal testimony of the sheriff of Amite County was so prejudiced as to require the court to grant a new trial.
The testimony introduced by the state and the defendant indicates that on June IS, 1971, at or near twilight, Lonnie Simpson, Jr. drove his pickup truck into the front yard of the appellant’s home to a place within a few yards of appellant’s front door. The left side of the truck (the driver’s side) was adjacent to and near the appellant’s front door. Mrs. Cummings went out to the truck to discuss a bill due to Mr. Simpson. The appellant heard Mr. Simpson tell Mrs. Cummings:
“ . . . [Tjhat there no good nigger loving son of a bitching husband of yours caused me not paying her and that’s when I got up and went to the door. I said, Junior, you’re wrong, she gets her own welfare check and if she wants to pay you she can pay you, ain’t a thing I can do, all I can do is cook and wait on her, and he said, hell, no, me or you one is going to die tonight, and my wife said, look out, he is getting his gun, and she broke and run away from the truck over there against my car, and I just reached around behind the door and got my gun and I started to go out the door. When I started to push the door open I spied that gun barrel coming out of that door so I jumped back and I shot right through, right next to the facing, I shot through middle ways of that door and I just put the gun back up in the rack there and taken off down through that weed and briar patch, . . . ”
The defendant went to a neighbor’s house and asked her to call the officers. When they came they found Mr. Simpson slumped over the steering wheel of the truck. His shotgun was in his lap with the barrel protruding out through the truck window. He was still breathing, but he died in a short time after the officers had him transported to a hospital.
The state introduced pictures of the scene. The defendant introduced a picture of the screen door showing a large hole in the screen at the point where the defendant said he fired his gun. The officers testified that there was no hole in the screen door when they were there investigating the homicide. Mrs. Cummings did not testify. The appellant testified that she was in New Orleans. He said: “She is a sick woman, she’s got to have somebody to wait on her.”
The state contends that the rule expressed in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933) does not apply because there were discrepancies in the testimony; that defendant told them he shot the deceased with a different gun from the gun he now says he used; and that the angle from the screen door to the truck would not have broken the back window in the cab of the truck.
An examination of this record, however, has convinced us that there is no substantial contradiction of the testimony of the defendant Cummings. His testimony is reasonable under the facts in this case. Even if we assume that the state is correct in arguing that the defendant fired his shotgun from a place other than through the screen door, the defendant’s actions must be considered in light of the circumstances existing at the time of the shooting *409 incident. The evidence shows that when the decedent drove his truck up to the very front door of the appellant’s home at dusk, he thrust his shotgun out through the window of his truck pointed toward the appellant’s home. The actions of Simpson were calculated to generate considerable apprehension on the part of the occupants of the house and to engender counter measures on their part. There is no contradiction of the defendant’s statement as to why Mr. Simpson went to the home of appellant. Defendant’s testimony that Mr. Simpson threatened him is corroborated by the physical fact that he had his gun pointed out of the window when the officers arrived, and since he was shot in the head, he could not have performed the act of pointing his gun through the window after having been wounded. Moreover, Mr. Simpson was still alive when the officers arrived.
We are convinced that this is another one of those unfortunate cases where persons often lose their lives when they attempt to take the law into their own hands and venture forth to do violence.
The appellant has invoked the so-called “Weathersby Rule”. (See Weathersby v. State, 165 Miss. 207, 147 So. 481 [1933]). This rule is set out in Lee v. State, 232 Miss. 717, 100 So.2d 358 (1958):
“It has been for some time the established rule in this state that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” 232 Miss. at 723, 100 So.2d at 360.
There are many cases in which this rule has been affirmed.
There is another rule that requires us to look with favor upon the application of the “Weathersby Rule” in the present case as expressed by this Court in Lee v. State, supra. We quoted from Bowen v. State, 164 Miss. 225, 232, 144 So. 230, 232 (1932) in adopting a quotation from 30 C. J. Homicide, § 262 (1923), as follows:
“It is a general rule, expressly affirmed by statute in some jurisdictions, that a person is justified in taking life in defense of his habitation where it is actually or apparently necessary to do so in order to repel another person who attempts to enter in a forcible or violent manner for the apparent purpose of committing a felony therein upon either person or property or of inflicting great bodily harm or of assaulting, or offering' personal violence to a person dwelling or being therein. See, also, 40 C.J.S. Homicide, § 109.” 232 Miss. at 724, 100 So. 2d at 361.
We hold that the trial court should have directed a verdict of not guilty in favor of the defendant William Andrew Cummings. The prosecution in this case is therefore dismissed and the defendant discharged.
Reversed and rendered.
PATTERSON, INZER, ROBERTSON and BROOM, JJ., concur.