# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-02147-SCT

*CORY JERMINE MAYE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRITS OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2007 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ABRAM J. PAFFORD |
| | MICHAEL S. LABSON |
| | ANNA ST. JOHN |
| | ROBERT B. McDUFF |
| | ROBERT E. EVANS |
| | BENJAMIN J. VERNIA |
| | JESSICA GABEL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LA DONNA C. HOLLAND |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION - 12/02/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. The Court of Appeals reversed Cory J. Maye's conviction for capital murder and remanded for a new trial, finding that the trial court had violated Maye's constitutional right to be tried in the county where the offense occurred. We granted both the State's and Maye's petitions for certiorari. Finding that the circuit court improperly denied Maye's requested defense-of-others jury instruction, we vacate the Court of Appeals' decision, reverse the circuit court's judgment, and remand this case to the trial court for further proceedings consistent with this opinion. We do not address the vicinage issue, but on remand, Maye is entitled to reassert his right to be tried in Jefferson Davis County.

## FACTS AND PROCEDURAL HISTORY

¶2. In December 2001, Cory Maye fatally shot Officer Ron Jones of the Prentiss Police Department while Jones was executing a search warrant on Maye's apartment. The following facts surrounding the execution of the search warrant and Maye's shooting of Officer Jones are taken from the Court of Appeals' opinion. *See Maye v. State*, 2009 WL 3823287 (Miss. Ct. App. Nov. 17, 2009).

On the evening of December 26, 2001, Officer Ron Jones of the Prentiss Police Department secured two search warrants for a duplex located on Mary Street in Prentiss, Mississippi. Officer Ron Jones presented two affidavits and search warrants to Municipal Judge Donald Kruger. Officer Ron Jones signed the affidavits in the presence of Judge Kruger. The affidavits indicated that Officer Ron Jones had received information from a confidential informant who had within the prior twenty-four hours seen a large amount of marijuana stored in the duplex. Officer Ron Jones also attested that he had information from various sources that drugs were being sold out of the duplex. Officer Ron Jones attested that he had conducted surveillance of the duplex and had seen large amounts of traffic there at unusual hours. Judge Kruger discussed the search warrant with Officer Ron Jones, and later testified, "Yes, I talked with him about it. He said that he was reliable, a person, that the informant was, and that one or two arrests had been made because of this reliable, this so-called reliable informant." Based on Officer

2

Ron Jones's affidavit, Judge Kruger issued two search warrants for the Mary Street duplex, one for the left side of the duplex identifying Jamie Smith and/or persons unknown as the occupants and one for the right side of the duplex, which listed persons unknown as the occupants.

After securing the search warrants, Officer Ron Jones selected a team from the Prentiss Police Department, the Bassfield Police Department, the Jefferson Davis County Sheriff's Department, and the Pearl River Basin Narcotics Task Force to assist him in executing the search warrants. The officers were separated into two teams: one team to search the left side of the duplex and the other team to search the right side of the duplex. Agent Darrell Graves led Officers Mike Brown, Earl Bullock, Allen Allday, and Terrence Cooley in executing the search warrant on Smith's apartment, which was the left side of the duplex. Officer Ron Jones led Officers Stephen Jones, Darrell Cooley, and Phillip Allday in executing the search warrant on Maye's apartment, which was the right side of the duplex.

The officers arrived at the Mary Street duplex in marked police cars. The officers parked the cars directly in front of the duplex. Officer Ron Jones's team was the first to arrive at Maye's side of the duplex. Officers Ron Jones, Stephen Jones, and Darrell Cooley took the front door with Officer Phillip Allday guarding the back door.

Maye testified that he was asleep on the "chair right beside the front door." The officers testified that they went to the front door and loudly announced, "police, search warrant," three times. Officer Darrell Cooley testified that he arrived at the door first. The front porch light was on. Officer Darrell Cooley testified that he loudly announced, "police," then someone behind him announced, "search warrant." He then kicked at the door. Officer Darrell Cooley testified that he yelled "police" a second time, then someone behind him announced "search warrant" loudly. Again, Officer Darrell Cooley kicked at the door.

Officer Stephen Jones reported that at this point he could see a light in the house through the cracked blinds. He testified that "[t]he blinds opened, it appeared that somebody opened the blinds and looked out." When the blinds were opened, he noticed the light on inside of Maye's apartment. Officer Darrell Cooley testified that this was the first time that he noticed a light on inside the apartment. Officer Darrell Cooley testified that he looked "back in toward the window on the door, and [he] could see a light back to the left side of the door."

3

After noticing the light, Officer Darrell Cooley yelled, "police," a third time with someone behind him announcing "search warrant." When the door would not open, the officers decided to go to the back of the duplex to gain entry.

Officers Phillip Allday and Terrence Cooley were at the back of the duplex. Officer Terrence Cooley testified that he could "clearly hear" his fellow officers at the front of the house announce police, search warrant three times while he was at the back steps.

Officer Graves was in charge of executing the search warrant on Smith's apartment (left side). Officer Graves confirmed that the officers on Maye's side of the duplex had announced, "police, search warrant," as Officer Graves approached Smith's apartment. The occupants of Smith's apartment (left side) responded to the announcements and opened their door to allow the officers to execute the search warrant.

Unable to gain entry through Maye's front door, Officers Ron Jones and Stephen Jones went to the back door of Maye's apartment, leaving Officer Terrence Cooley to guard the front door. Officer Stephen Jones testified that upon reaching the back door, Officer Ron Jones checked to see if the back door would open, and then announced, "search warrant, police, search warrant." When the door would not open, Officers Ron Jones and Stephen Jones proceeded to the front of the house. Officers at the back of the duplex kicked the back door open. A couple of minutes passed between the officers' first announcement at the front door and the back door being kicked in. After the back door was opened, Officer Ron Jones was called to the back of the house. He proceeded to enter the house, yelling "police." He was met by shots fired from Maye's gun. Officer Ron Jones immediately left Maye's apartment stating that he had been shot. He was taken by Officer Stephen Jones to the hospital, where Officer Ron Jones died shortly after arrival. Officer Cooley apprehended Maye. A search of Maye's apartment conducted later by officers yielded small amounts of marijuana.

Maye, who admittedly was asleep on a chair right by the front door, testified that he was wakened by the banging on the front door. Maye denied hearing the police announce "police, search warrant" or looking out the window. Maye testified that he awoke frightened and ran to the bedroom in the back of the house. Maye testified that he grabbed his gun, loaded it, and laid it on the floor by the foot of his bed. His fourteen-month-old daughter was asleep in the middle of the bed. Maye testified that he heard kicks to the back door. He testified that he fired when he heard someone entering the house. Maye testified that after he fired the shots, he heard the other officers

4

yell, "police, police, you just shot a[n] officer." Maye testified that he immediately he put his weapon down and slid it away.

*Maye*, 2009 WL 3823287, at **1-3. On December 26, 2001, immediately after the shooting, Maye was arrested and held without bond. Maye was charged with capital murder for the killing of a police officer. *Id.* at *3. Maye requested and received a change of venue from Jefferson Davis County to Lamar County. Upon a second motion, he received a change of venue to Marion County. After a four-day trial beginning on January 21, 2004, Maye was convicted of the capital murder of Officer Jones and ultimately sentenced to life imprisonment without the possibility of parole.

¶3.     Maye appealed his conviction, and the case was assigned to the Court of Appeals. The Court of Appeals addressed seven of Maye's twelve asserted issues and found six of those to be without merit. Particularly, it determined that Maye was not entitled to his requested jury instructions on the defense of others. *Maye*, 2009 WL 3823287, at **8-9. But the Court of Appeals reversed Maye's conviction and sentence and remanded for a new trial, finding that the trial court had violated Maye's fundamental constitutional right to trial in Jefferson Davis County, the county where the offense had occurred. *Id.* at *6. Specifically, the Court of Appeals found that the trial court had failed to offer adequate justification for refusing to allow Maye to withdraw his waiver of that right and to send the case back to that county. *Id.* at *8.

¶4.     The State filed a petition for writ of certiorari, asking this Court to review that determination. Maye filed a "conditional" petition for certiorari, asking this Court, in the event it granted the State's petition and reversed, to review the Court of Appeals' decision

5

regarding the other issues. This Court granted both petitions on June 22, 2010. We vacate the Court of Appeals's judgment. We also reverse the judgment of conviction because the trial court abused its discretion when it refused Maye's requested jury instructions, which would have properly extended his self-defense claim to defense of his daughter.

**ISSUES**

¶5. Under Mississippi Rule of Appellate Procedure 17(h), "[This] Court's review on the grant of certiorari shall be conducted on the record and briefs previously filed in the Court of Appeals and any supplemental briefs filed." Miss. R. App. P. 17(h). In his appellate brief, Maye asserted the following issues:

I. Whether the evidence presented at trial was sufficient as a matter of law to sustain a conviction on the charged offenses.
II. Whether a new trial must be granted because the jury's verdict was against the weight of the evidence.
III. Whether the testimony of the State's forensic pathologist was admitted in error.
IV. Whether the circuit court erred in denying supplemental discovery of the credentials and practices of the State's expert witness.
V. Whether newly discovered forensic evidence necessitates a new trial.
VI. Whether the circuit court erroneously deprived the defendant of his right to be tried in Jefferson Davis County, as guaranteed by Article 3, Section 26 of the Mississippi Constitution.
VII. Whether the circuit court erred in refusing defendant's requested jury instructions.
VIII. Whether the State procured a search warrant through fraud, mandating a new trial.
IX. Whether the circuit court should have granted a motion to suppress due to the lack of probable cause supporting the search warrant.
X. Whether prosecutorial misconduct demands reversal of the conviction.
XI. Whether the defendant received effective assistance of counsel as guaranteed by the Sixth Amendment [to] the U.S. Constitution.
XII. Whether the sentence constituted cruel or unusual punishment in violation of Article 3, Section 28 of the Mississippi Constitution or the Eighth Amendment [to] the U.S. Constitution.

6

¶6. Relying on Rule 17(h), we focus our discussion on Issue VII, jury instructions. Miss. R. App. P. 17(h).

## DISCUSSION

¶7. Maye argues that the trial court committed reversible error by refusing his proposed jury instructions D-8 and D-9. The standard of review for the denial of jury instructions is well-settled. Jury instructions generally are within the discretion of the trial court. *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009) (citing *Higgins v. State*, 725 So. 2d 220, 223 (Miss. 1998)). This Court has explained that jury instructions must be considered together:

> In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.

*Rubenstein v. State*, 941 So. 2d 735, 784-85 (Miss. 2006) (internal quotations and citations omitted). Additionally, we have explained that "[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Hearn v. State*, 3 So. 3d 722, 738 (Miss. 2008) (quoting *Chandler v. State*, 946 So. 2d 355, 360 (Miss. 2006)). *See also* *Brooks v. State*, 18 So. 3d 833, 839 (Miss. 2009).

¶8. But "[i]n homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court's failure to do so is error requiring reversal of a

judgment of conviction." ***Manuel v. State***, 667 So. 2d 590, 593 (Miss. 1995). "If the defendant presents sufficient evidence in the record to support his theory of the case, he should then be given an instruction on his theory of the case. There needs not be even a plausible explanation." ***Walker v. State***, 913 So. 2d 198, 235 (Miss. 2000). When serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused. ***Davis***, 18 So. 3d at 847 (citing ***Stringfellow v. State***, 595 So. 2d 1320, 1322 (Miss. 1992)).

¶9. The defense's proposed instructions D-8 and D-9 both further defined self-defense. The trial court and the Court of Appeals found that the two self-defense instructions actually given to the jury (number 5 and number 6) sufficiently stated the law of self-defense and that the additional instructions were not necessary. ***Maye***, 2009 WL 3823287, at \*\*8-9. We disagree.

¶10. Granted instruction number 5 stated simply that:

> The Court instructs the jury that if you find from the evidence in this case that on December 26, 2001 Cory J. Maye did shoot and kill Ron Jones; but that such shooting was in necessary self-defense, *as defined by other instructions of the Court*; then your duty under the law is to find Cory J. Maye not guilty of the murder of Ron Jones.

(Emphasis added.) And granted instruction number 6 provided that:

> The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury unanimously find that the defendant acted in self-defense then it is your sworn duty to return a verdict in favor of the defendant.

8

*Maye*, 2009 WL 3823287, at *8 n.1. While these two instructions are correct statements of the law, they do not fully define self-defense as applied to the facts of this case.[1]

¶11.    Neither instruction addressed Maye's asserted self-defense theory to include a "defense-of-others" rationale.  Our justifiable-homicide statute provides the basis for a defense-of-others instruction.  Miss. Code Ann. § 99-3-15(1)(f) (Rev. 2007).  Such an instruction may be proper when the defendant has reasonable grounds to believe certain force is necessary to prevent the danger of imminent death or bodily injury to another person. *McGehee v. State*, 104 So. 150, 153 (Miss. 1925).  *See also* *Sheppard v. State*, 777 So. 2d 659, 662-63 (Miss. 2000) ("[A] defense-of-others instruction . . . inform[s] the jury that self-defense may be applicable where a defendant reasonably believed that another person, in addition to himself, may be in danger of imminent death or great bodily injury.").

¶12.    Our cases addressing the defense-of-others instruction do not require that the danger to the third person be separate and distinct from the danger perceived by the defendant.  *See, e.g.,* *Calhoun v. State*, 526 So. 2d 531, 533 (Miss. 1988) (reversing conviction because deceased's record of threats against defendant and third party warranted defense-of-others instruction in addition to self-defense instruction); *Guster v. State*, 758 So. 2d 1086, 1099 (Miss. Ct. App. 2000) (finding defense-of-others instruction required where defendant

_____

[1] We note that the jury was not specifically instructed on who has the burden of proof on self-defense.  As we held in *Pierce v. State*, 289 So. 2d 901 (Miss. 1974), the burden of proof to prove self-defense is not on the defendant.  Rather, it lies with the State to prove that the defendant *did not* act in self-defense. *Id.* at 902.  But instruction number 2 told the jury that "the State [has] the burden of proving the defendant guilty of every material element of the crime . . ." and that "[t]he defendant is not required to prove his innocence."  This instruction survives the *Pierce* rule, since it informed the jury that it should not look to Maye to prove self-defense, but to the State to prove the lack thereof.

9

testified that she had stabbed deceased out of fear for her own and her son's safety). In other words, the defendant and the third party may be threatened by the same source. The jury must decide the reasonableness of the defendant's response in light of the circumstances. *Cf.* *Hart v. State*, 637 So. 2d 1329, 1339 (Miss. 1994).

¶13. But this is not to say that the mere presence of a third party will warrant the instruction. The third party must be exposed to some real and apparent danger when the defendant acts. In *Folks v. State*, we affirmed the denial of a defense-of-others instruction where the deceased had retreated almost twenty feet from the third party. *Folks v. State*, 230 Miss. 217, 92 So. 2d 461, 462-63 (1957). After his retreat and when he was shot, the deceased posed a threat of imminent danger to the defendant and not to the third party. *Id.* at 462. Thus, although evidence was insufficient to warrant the defense-of-others instruction, we reversed and remanded for a jury to reconsider the defendant's self-defense theory. *Id.* at 463.

¶14. It is undisputed that Maye's fourteen-month-old daughter was asleep on the middle of the bed when Officer Jones entered the bedroom and was shot by Maye. We agree with the Court of Appeals that, "[b]ecause the danger to Maye and his child were one and the same, if a self-defense instruction was appropriate, as it was, then likewise a defense of others instruction was also appropriate." *Maye*, 2009 WL 3823287, at *8. So Maye should have received a "defense-of-others" instruction to address his asserted defense of his daughter. Instructions D-8 and D-9 both did so. But before we may find error in the trial court's refusal of instruction D-8 or D-9, we must be sure that either or both of them were correct statements of the law.

10

¶15. For the following reasons, we think instruction D-8 was a correct statement of the law and should have been given. First, instruction number 5 did not really instruct the jury on self-defense at all, since it told the jury that self-defense would be defined in other instructions and merely provided the jury with the proper verdict if that definition was met. Instruction number 6 correctly defined self-defense, generally.[2] But it did not go far enough in this case. It correctly defined self-defense as requiring the defendant to have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and reasonable grounds to believe that there was imminent danger of such act being accomplished. And it correctly told the jury that it must "determine the reasonableness of the grounds upon which the defendant acts." But instruction number 6 did not tell the jury *how* to make that determination.

¶16. Instruction D-8 would have done just that. Instruction D-8 told the jury exactly how to judge Maye's actions on the night he shot Officer Jones. It stated that:

> The Court instructs the jury that you are not to judge the actions of Cory J. Maye in the cool, calm light of after-developed facts, but instead you are to judge his actions in the light of the circumstances confronting Cory J. Maye at the time, as you believe from the evidence that those circumstances reasonably appeared to him on that occasion; and if you believe that under those circumstances it reasonably appeared to Cory J. Maye, at the instant that he took up a weapon, that Cory J. Maye then and there had reasonable ground to apprehend a design on the part of Ron Jones to kill Cory J. Maye or his daughter or to do Cory J. Maye and his daughter some great personal injury, and there reasonably appeared to Cory J. Maye to be imminent danger of such designs being accomplished; then Cory J. Maye was justified in anticipating

---

[2] Instruction number 6 was a nearly verbatim statement of the self-defense instruction this Court recommended in **Robinson v. State**, 434 So. 2d 206, 207 (Miss. 1983), *overruled on other grounds by* **Flowers v. State**, 473 So. 2d 164, 165 (Miss. 1985), and **Reddix v. State**, 731 So. 2d 591, 595 (Miss. 1999).

11

an attack and using reasonable means to defend such attack; then you must find Cory J. Maye not guilty of the murder of Ron Jones.

¶17.    And the method for making that determination embodied by instruction D-8 has long been recognized by this Court.  As far back as 1899, this Court recognized the principle that "the defendant should . . . [be] permitted to claim the benefit of any apparent, as well as of any real, danger that the evidence afforded him, and that he [may] . . . act[] upon the facts of the case *as they reasonably appeared to him*, and was justified in so doing."  **McCrory v. State**, 25 So. 671, 671-72 (Miss. 1899) (emphasis added).  We held in **Scott v. State**, 42 So. 184 (Miss. 1906), that in a prosecution for murder, where the accused claimed self-defense as a justification, the court should have instructed the jury that, "in passing upon the action of the defendant the jury should not try him by the light of after-developed events [nor] hold him to the same cool and correct judgment which they are able to form. They should put themselves in his place and judge . . . his acts by the facts and circumstances by which he was surrounded."  **Id.** at 184- 85.[3]

¶18.    Maye's theory of the case was self-defense, which was supported by some evidence. Instruction D-8 was a correct statement of the law regarding how the jury should have interpreted Maye's actions, and it properly would have extended Maye's self-defense claim to include his asserted claim of defense of his infant daughter.  Neither of these was covered

---

[3] The wording of instruction D-8 most recently has been used in cases involving accidental killings, occurring as the defendant was acting in lawful self-defense. *See* **Evans v. State**, 797 So. 2d 811, 814-15 (Miss. 2000).  But to the extent that instruction D-8 was improperly worded, it is the duty of the trial court to see that the instructions are placed in proper form for submission to the jury. **Manuel**, 667 So. 2d at 593.

by other instructions. Therefore, we hold that the trial court abused its discretion by refusing instruction D-8, an error which warrants reversal. *Manuel*, 667 So. 2d at 593.

¶19.   Maye also contends that instruction D-9 would have informed the jury of a homeowner's right to use force to protect his dwelling from what reasonably appears to be an unlawful entry. *See* Miss. Code Ann. § 97-3-15(1)(e) (Rev. 2006); *Lee v. State*, 100 So. 2d 358, 361 (Miss. 1958).  Requested instruction D-9 stated:

> The Court instructs the jury that Cory J. Maye was not under an obligation to wait for serious bodily harm upon him and his daughter from Ron Jones before Cory J. Maye took action to defend himself and his daughter from an attack. If you find from the evidence that Cory J. Maye took action to defend himself and his daughter without knowing for certain that Ron Jones was about to cause him and his daughter serious bodily harm, and further that it was reasonably apparent to a reasonable person of average prudence that Cory J. Maye and his daughter were in danger of serious bodily harm, then you must find Cory J. Maye not guilty of the murder of Ron Jones.  It is for the jury to determine the reasonableness of the ground upon which Cory J. Maye acted.

As written, the instruction covers self-defense and defense of others and fails to convey the substance of Section 97-3-15(1)(e) to the jury.  Further, had D-9 been given along with D-6 and D-8, the jury would have received multiple instructions on self-defense and defense-of-others.  Therefore, the instruction did not properly state the law on a homeowner's right to protect his dwelling, and it would have been cumulative.  We find no error in the denial of D-9.  *Hearn*, 3 So. 3d at 738.

## CONCLUSION

¶20.   We vacate the judgment of the Court of Appeals.  We also reverse Maye's judgment of conviction, because the trial court committed reversible error by refusing Maye's requested defense-of-others jury instruction.  Therefore, we remand this case to the trial court

13

for a new trial consistent with this opinion. On remand, Maye is entitled to reassert his right to be tried in Jefferson Davis County. *State v. Caldwell*, 492 So. 2d 575, 577 (Miss. 1986) (en banc) (holding that a defendant could reassert his right to be tried in the county where the offense occurred after appellate reversal).

¶21. **THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**CARLSON, P.J., DICKINSON AND KITCHENS, JJ., CONCUR. GRAVES, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. LAMAR, J., CONCURS IN RESULT ONLY. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY PIERCE, J. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY LAMAR, J.**

**GRAVES, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶22. I agree with the majority that Cory Maye's conviction for capital murder should be reversed and remanded for a new trial. However, I write separately to explain that Maye does not need to reassert his right to be tried in Jefferson Davis County. The proper venue for his trial is Jefferson Davis County. In *State v. Caldwell*, 492 So. 2d 575, 577 (Miss. 1986), this Court found that a criminal defendant's constitutional right, which was waived during his first trial, to have his criminal trial held in the county in which the crime was committed is reinstated after appellate reversal. Further, this Court ordered Caldwell's retrial to be transferred to the Circuit Court of Panola County, the county in which the crime occurred. *Id*. Under *Caldwell*, the slate is wiped clean, and Maye's constitutional rights are restored. Venue is proper in Jefferson Davis County unless Maye moves to transfer venue. Therefore, I specially concur.

14

¶23. I also must clarify the procedural history as stated by the majority. Maye filed a Motion for Change of Venue on February 2, 2003. The State filed a Response and Agreement to Motion of Defendant for Change of Venue on February 24, 2003. The Circuit Court of Jefferson Davis County granted this motion and transferred venue to Lamar County by Order filed March 25, 2003. On July 28, 2003, Maye filed a Motion to Reconsider Order Granting Change of Venue, asking the trial court to return the matter to Jefferson Davis County for trial. The State filed an objection on August 6, 2003. On October 1, 2003, the Circuit Court of Jefferson Davis County entered an Order Granting Change of Venue, but rather than return the matter to Jefferson Davis County, the trial court transferred venue to Marion County. After a trial beginning on January 21, 2004, Maye was convicted of capital murder and sentenced to death. After various post-trial motions and hearings, the death sentence was vacated. The district attorney elected not to pursue the death penalty, and Maye was resentenced to life by Order of Conviction in the Circuit Court of Jefferson Davis County on November 2, 2007.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶24. Although the Court is vacating the Court of Appeals judgment and remanding for a new trial, the Court grants Maye the right to reassert his venue request, an issue I believe is foreclosed under the particular facts of this case, unless the trial court ignores our precedent. *See McCune v. State*, 989 So. 2d 310, 316-18 (Miss. 2008) (citing *White v. State*, 495 So. 2d 1346, 1349 (Miss. 1986)).

15

¶25. Maye waived his constitutional right to be tried in the county where the crime occurred when he sought and received a change of venue from Jefferson Davis County to Lamar County. The trial court granted the motion, which alleged Maye could not have and would not receive a fair and impartial trial in Jefferson Davis County, as the "public [had] prejudged the facts and circumstances of the case and [bore] ill will toward Maye given that Jones was a police officer and the son of Prentiss Chief of Police, Ron Jones, Sr." The trial court granted the motion, changing the venue to Lamar County. Maye then filed a "Motion to Reconsider Order Granting Change of Venue," alleging that a "Lamar County jury will not be impartial in this capital/death penalty case." Maye requested the trial be returned to Jefferson Davis County for trial, despite this Court's clear mandate in *White* and its progeny. *See White v. State*, 495 So. 2d at 1349. The trial court granted the motion and changed venue to Marion County, where Maye was tried and convicted The Court of Appeals reversed Maye's conviction and sentence and remanded for a new trial, finding that the trial court had violated Maye's constitutional right to trial in Jefferson Davis County, the county where the offense occurred, the very right he chose to waive when he filed a motion to seek a trial elsewhere. *Maye v. State*, 2009 WL 3823287, *6 (Miss. Ct. App. March 9, 2009). The *Caldwell* rule, allowing for reassertion of a constitutional right under the particular facts of the case, did not apply at the time the trial court declined to return the case to Jefferson Davis County. *See State v. Caldwell*, 492 So. 2d 575, 577 (Miss. 1986) (six-year time lapse and Caldwell's belief that the adverse effects of publicity had subsided). The State filed a petition for writ of certiorari, asking this Court to review that determination.

16

¶26.    The Court of Appeals interpreted Maye's second motion as a withdrawal of his waiver to be tried in Jefferson Davis County and found that "[a] defendant has the right to withdraw a prior waiver of a constitutional right in the absence of valid justification to refuse him the right." *Maye*, 2009 WL 3823287, at *8 (citing *Stevens v. Marks*, 383 U.S. 234, 243-44, 86 S. Ct. 788, 793, 15 L. Ed. 2d 724 (1966)).  The Court of Appeals erred when it held that the trial court's refusal to return the case to Jefferson Davis County was reversible error, for indeed, valid justification already had been established by following Maye's wishes and by virtue of the irrebuttable presumption established in *McCune*.  *See McCune*, 989 So. 2d at 316-18.  The justification for prohibiting Maye's withdrawal of the waiver of his right to be tried in Jefferson Davis County already is established by the record and our caselaw requiring the trial court to change venue.  The elements that create an irrebuttable presumption in favor of granting a change of venue are:

(1) *Capital cases* based on considerations of a heightened standard of review;

(2) Crowds threatening violence toward the accused;

(3) An inordinate amount of media coverage, particularly in cases of

(a) *serious crimes against influential families*;

(b) *serious crimes against public officials*;

(c) serial crimes;

(d) *crimes committed by a black defendant upon a white victim*;

(e) where there is an inexperienced trial counsel.

17

*White*, 495 So. 2d at 1349. There was an inordinate amount of media coverage of this capital trial of a black defendant who had been indicted for a serious crime against a white public official who was a member of an influential family.

¶27. Our law allows a defendant to waive the right to be tried in the county where the crime occurred and to seek a change of venue to preserve the right to be tried by an impartial jury. *Simon v. State*, 688 So. 2d 791, 806 (Miss. 1997). Maye is not seeking an impartial jury, but according to his pleadings, is seeking a perceived advantage of a jury with a more favorable racial composition. In rejecting Simon's claim, we stated, "Simon did not attempt to withdraw the motion until the court had acted on this motion by granting the change of venue." *Id.* Maye's second motion was like Simon's "conditional" motion in that Maye sought a venue with a similar racial composition to that of Jefferson Davis County.

¶28. Although the issue of venue can be reconsidered on remand, *State v. Caldwell*, 492 So. 2d 575, 577 (Miss. 1986) (en banc) (holding that a defendant could reassert his right to be tried in the county where the offense occurred *after* appellate reversal), the trial court committed no error. The facts that created the irrebuttable presumption in this case have not changed, only Maye's wishes.

¶29. Although not enunciated as such, the principle followed in *Simon* was judicial estoppel. Judicial estoppel prevents a party from taking inconsistent positions in a trial. *Kirk v. Pope*, 973 So. 2d 981 (Miss. 2007). Constitutional rights are subject to the principle of estoppel. *Ralston v. Cox*, 123 F.2d 196, 198 (5th Cir. 1941). We have prevented a defendant from taking inconsistent positions regarding his constitutional rights. In *Duplantis v. State*, the defendant argued on appeal that he was denied the fundamental right of access to his

18

attorney, asserting inadequate time to confer in preparing his defense. *Duplantis v. State*, 708 So. 2d 1327, 1337 (Miss. 1998). However, the trial court had offered Duplantis the opportunity for a continuance, which he chose not to accept. *Id.* As he rejected the trial court's offer of additional preparation time, we found that he could not argue on appeal the denial of a right of access to his attorney. *Id.* at 1336 ("[The defendant] cannot decline the trial court's offer to grant him more time to prepare a defense, and then argue to us that his defense was inadequate because he lacked time to prepare it."). Similarly, a defendant subject to custodial interrogation may waive certain constitutional rights and render any resulting confession admissible at trial. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966); *Greenlee v. State*, 725 So. 2d 816, 827 (Miss. 1998).

¶30.    Other courts have been unwilling to grant defendants successive change-of-venue motions. In Maryland, a capital defendant was not entitled to a second change-of-venue motion that would have resulted in the case being returned to the original county of indictment. *Pantazes v. State*, 831 A.2d 432, 439 (Md. 2003). In Arkansas, a defendant argued that he had a constitutional right to be tried in the county where the crime occurred; thus, he attempted to "withdraw" his granted motion to change venue. *Dansby v. State*, 1 S.W.3d 403, 408 (Ark. 1999). On appeal, the court rejected his argument, finding that the right to be tried in the county where the crime occurred was "qualified by the defendant's right to apply for a change of venue." *Id.* Once the defendant exercised the right to change venue, the trial court had the discretion to refuse future changes. *Id.* A Maine court held that, once the defendant sought and received a change of venue, he no longer had a

19

constitutional or statutory right to a trial in any particular county. *State v. Nile*, 595 A.2d 1047, 1048 (Me. 1991). The Florida Supreme Court addressed the venue issue in a death-penalty case with facts similar to those of this case. The court held that a trial court did not abuse its discretion in refusing to return the case to the county where the crime occurred after the defendant had agreed to an alternate venue. *Kearse v. State,* 770 So. 2d 1119, 1123-24 (Fla. 2000).

¶31.    Although the majority allows Maye to reassert on remand a right he has waived, the trial court is bound by *Simon* and *McCune*, and such other facts that may be presented by the defendant and the State. *See McCune*, 989 So. 2d at 316-18; *Simon*, 688 So. 2d at 806.

**PIERCE, J., JOINS THIS OPINION IN PART.**

**PIERCE, JUSTICE, DISSENTING:**

¶32.    The Majority finds error principally in that the jury was not instructed to consider Maye's behavior "by the facts and circumstances by which he was surrounded."[4] Taken as a whole, the instructions, so the Majority says, "did not tell the jury *how* to" determine whether the defendant's acts were reasonable.[5] The Majority also suggests that this error was compounded because Maye's asserted defense of his infant daughter was not covered by other instructions. Neither by themselves nor in tandem do these errors, if errors at all, rise to the level of abuse of discretion.

---

[4]Maj. Op. ¶ at 17 (quoting *Scott v. State*, 42 So. 184, 185 (Miss. 1906)).

[5]Maj. Op. ¶ at 15.

20

¶33. First, the Majority asserts that the jury should have been instructed to "judge . . . [the defendant's] acts by the facts and circumstances by which he was surrounded."[6] The Court of Appeals already has addressed this "how-to" argument. It has said that "[w]hen the trial court gives a ***Robinson***[7] instruction, the trial court does not err when it *does not instruct the jury to examine the circumstances at the time of the incident from the defendant's viewpoint*."[8] I agree with the Court of Appeals. In ***Cohen v. State***, we said that the ***Robinson*** instruction "clearly and comprehensively sets out the theory of self-defense."[9] If today's holding is the law, then the ***Robinson*** instruction is incomplete, and we should (as we did in ***Reddix v. State***[10]) recommend one that will stand up to our scrutiny.

¶34. Even if we decline to follow this precedent, we should remember that, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.[11] A comment on how to determine reasonableness is, manifestly, a comment on reasonableness. Instruction 6 clearly instructed that "[I]t is for the jury to determine the reasonableness of the grounds upon which the defendant acts." Reasonableness undeniably was covered in the jury instructions. Whether it was fairly

---

[6]Maj. Op. at ¶ 17 (quoting ***Scott v. State***, 42 So. 184, 184-84 (Miss. 1906)).

[7]Instruction 6 was nearly identical to the recommended self-defense instruction in ***Robinson v. State***, 434 So. 2d 206 (Miss. 1983) and ***Reddix v. State***, 731 So. 2d 591, 595 (Miss. 1999).

[8]***Johnson v. State***, 749 So. 2d 369, 373 (Miss. Ct. App. 1999) (emphasis added).

[9]***Cohen v. State***, 732 So. 2d 867, 872 (Miss. 1998).

[10]***Reddix v. State***, 731 So. 2d 591 (Miss. 1999).

[11]***Milano v. State***, 790 So. 2d 179, 184 (Miss. 2001).

covered is a matter about which reasonable persons could disagree. Matters of reasonable disagreement are the essence of trial-court discretion. And jury instructions are within the discretion of the trial court.[12] So, I cannot agree with this line of reasoning.

¶35.    The other reasoning for error articulated by the Majority is that the denied instruction would have advanced Maye's theory that this killing happened as a result of his defense of his infant child. This reasoning fails for two reasons.

¶36.    First, we have never said that the mere presence of a third party during some circumstance of violence that might warrant a self-defense instruction will warrant a defense-of-others instructions. Our contrasting dispositions of two cases was illustrative. In *Calhoun v. State*, we reversed because a defense-of-others instruction was not granted.[13] There, an ex-boyfriend came to the home of Tammy Jones and her new live-in boyfriend, Dexter Calhoun.[14] After exchanging heated words with Tammy, the ex-boyfriend marched to his automobile, threatening to "be right back" and "stomp her." As the ex-boyfriend was leaning into the passenger side of his automobile, Calhoun shot and mortally wounded him.[15]

¶37.    Contrast that with *Folks v. State*, where we granted of a self-defense instruction but not a defense-of-others instruction.[16] There, Johnny Folks, his wife, and his sister-in-law went looking for her husband, Bill Davis, who was drunk. When the group found Davis

---

[12]*Higgins v. State*, 725 So. 2d 220, 223 (Miss. 1998).

[13]*Calhoun v. State*, 526 So. 2d 531, 533 (Miss. 1988).

[14]*Id.* at 532.

[15]*Id.*

[16]*Folks v. State*, 230 Miss. 217, 220, 92 So. 2d 461 (1957).

(known to carry a switchblade), Davis advanced upon Folks, who shot Davis. There we said that Folks "would have been entitled to the [defense-of-others] instruction . . . if there had been sufficient proof that Mrs. Eunice Davis was in any real or apparent danger of losing her life or sustaining great bodily harm at the hands of W. E. 'Bill' Davis at the time he was shot."[17]

¶38.    One fact which distinguishes *Calhoun* and *Folks* is the articulated threat against the third person in *Calhoun* that we did not find in *Folks*. There is no evidence of a threat specifically articulated toward the infant in the room; Maye seeks this instruction based on her presence alone.

¶39.    Further, my first point complements my second: The necessary finding by the jury that Maye knew the intruder was a police officer negates any logical argument for this additional theory. That finding of fact, by which we are bound, is logically independent of the presence or absence of a defense-of-others instruction, and Maye offered no evidence that Jones, personally, or the police, generally, had some design to harm the infant. Accepting as true the jury's finding of fact that Maye knew Jones to be a peace officer – as we must – we can only conclude that Maye offered *no evidentiary basis* for his defense-of-others theory. While it is true that in homicide cases, the trial court should instruct the jury about a defendant's theories of defense no matter how meager or unlikely,[18] we also have regularly upheld

---

[17]*Id.*

[18]*Manuel v. State*, 667 So. 2d 590, 593 (Miss. 1995)

23

denials of self-defense instructions because "simply claiming self-defense does not make it so."[19]  The same standard should to apply to defense of others.

## CONCLUSION

¶40.    The Majority finds error because the jury was not instructed to consider the facts from the perspective of Maye and because the jury was not instructed on his defense-of-others theory.  On the first point, the Majority neglects a good rule from the Court of Appeals.  On the second point, it finds error in the denial of a jury instruction which is logically inconsistent with an independent finding of fact by the jury.  From the Majority's discussion of jury instructions, I respectfully dissent.

¶41.    Further, this Court is not addressing the Court of Appeals' analysis of Maye's Motion to Reconsider Change of Venue.  While I think the Court of Appeals was incorrect in its analysis of that issue, that discussion is for another day.  I do agree, however, that Maye can, upon reversal, reassert his right to be tried in the county where the offense occurred, consistent with our ruling in *State v. Caldwell*.[20]

**LAMAR, J., JOINS THIS OPINION IN PART.**

_____

[19]*Strong v. State*, 600 So. 2d 199, 203 (Miss. 1992).

[20]*State v. Caldwell*, 492 So. 2d 575, 577 (Miss. 1986).

24